SIEGEL v. DETROIT CITY ICE & FUEL COMPANY.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DANGEROUS CONDITION OF PREMISES.

Where there was a sharp conflict in the testimony as to whether or not there was a hole on premises, leased by one defendant to the other, in which plaintiff's decedent fell, and whether or not decedent was guilty of contributory negligence in failing to see hole early in the evening in mid-December claimed to have been 5' to 6' wide by 7' to 8' long and about a foot and a half deep filled with snow, a light crust of ice and more snow over the crust, the issues of negligence of defendants and contributory negligence of the decedent were properly submitted to the jury.

2. DAMAGES—LEG INJURY—PAIN AND SUFFERING—HOSPITAL, NURSING AND MEDICAL EXPENSES.

Where plaintiff's decedent broke his leg, was invalided for over six months, suffered very great pain and inconvenience, contracted hospital, nursing and medical bills of over $1,200, verdict of $5,018.26 held, not excessive.

3. NEGLIGENCE—AUTOMOBILE PARKING LOT—CARE REQUIRED.

While the operator of an automobile parking lot is not an insurer of the safety of its business invitees, it has the duty to maintain its premises in a reasonably safe condition and not expose patrons to danger in entering or leaving the lot or in alighting from their cars.

4. SAME—KNOWLEDGE OF DANGEROUS CONDITION OF PREMISES—BURDEN OF PROOF.

A possessor of land is subject to liability for personal injuries to business visitors by a natural or artificial condition thereon if he knows, or by exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them but injured

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am. Jur., Trial, § 172.
[2] 15 Am. Jur., Damages, § 218.
[2] Excessiveness of verdict in action by person injured for injuries not resulting in death. (For the years 1916–1926.)    46 A.L.R. 1230, supplemented in 102 A.L.R. 1386.
[3, 4] 38 Am. Jur., Negligence, §§ 96, 98, 100.
[6] 32 Am. Jur., Landlord and Tenant, §§ 687, 688.

invitee has burden of showing condition of premises was such that owner should have known of the menace.

5. Landlord   and   Tenant—Common   Passageway—Dangerous Condition of Premises—Parking Lot.

  Lease of premises 140' x 197.7' for parking space for theater patrons, in which joint rights of ingress and egress for use of tenant, landlord who used one small building on the premises, and patrons of hamburger stand, leased to another tenant, over passageway in which there was a hole that plaintiff's decedent fell into, placed liability for such defective condition in both the lessor and the lessee as both had control and possession of such part of the premises.

6. Same—Invitees of Tenant on Common Passageway.

  Invitees of a tenant, who use common passageways which the tenant and others are entitled to use are regarded as invitees of the landlord while thereon.

Appeal from Wayne; Chenot (James E.), J. Submitted January 13, 1949. (Docket No. 27, Calendar No. 44,138.) Decided April 11, 1949.

Case by Max Siegel against Detroit City Ice & Fuel Company, a corporation, and Bernard L. Kilbride and another, doing business as Alhambra Theatre Company, for injuries sustained when he fell into a hole on parking lot owned by defendant Detroit City Ice & Fuel Company and leased to other defendant. Bernard R. Siegel, special administrator of the estate of Max Siegel, deceased, substituted as party plaintiff. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Edward N. Barnard,* for plaintiff.

*Davidson & Kaess* (*Richard K. Amerson,* of counsel), for defendant Detroit City Ice & Fuel Company.

*Alexander, Cholette, Buchanan, Perkins & Conklin,* for defendant Alhambra Theatre Company.

BUTZEL, J.   Max Siegel brought suit against the Detroit City Ice & Fuel Company, a Michigan corporation, herein referred to as the ice company and Bernard L. Kilbride and Leland G. Hillier, individually and as copartners doing business as Alhambra Theatre Company, herein referred to as the theater company, defendants, to recover damages for personal injuries resulting from an accident on December 14, 1941, caused by defendants' alleged negligence.   Max Siegel died in 1944 from causes unrelated to the injuries complained of in this action.   Bernard R. Siegel, special administrator of the estate of Max Siegel, was substituted as plaintiff herein.

Defendant theater company operates a theater on Woodward avenue near Kenilworth avenue in Detroit.   Defendant ice company owns property with a frontage of 140 feet on the south side of Kenilworth avenue near Woodward avenue.   It has a depth of 197.7 feet.   The lot on its east side abuts an alley.   The lot is almost opposite the rear of the theater.   There are 2 buildings on the lot, 1 a small brick building near the center of the lot and referred to as the hamburger stand, and a larger brick building at the northeast corner of the lot near the alley. Neither building has much depth.   In May, 1941, the theater company leased the lot from the defendant ice company for use as a parking lot by the patrons of the theater.   There was expressly excluded from the lease the 2 buildings and the right of ingress and egress through the lot for the use of the occupants of these two buildings.   The larger building was retained by the ice company for its own use, and the smaller building, referred to as the hamburger stand, was rented to others.   A sign was erected on the lot stating that it was for the use of the patrons of the theater and that others would be charged a fee of 10 cents.   There were two driveways from

Kenilworth avenue into the lot, one on the west side of the lot and one on the east side extending between the two buildings, which are about 15 feet apart, the latter being referred to as the easterly drive. This easterly drive was cemented back from the curb line for a distance of about 5 to 10 feet, the record not showing the exact number. The remainder· of the lot was cinderized. The easterly driveway was used by the occupants of both buildings and those having business with them. Naturally cars were driven through the passageways and in the rear of the buildings by patrons of the theater and the occupants of the two buildings, which together with the use of the passageways, were reserved by the ice company for ingress and egress.

Plaintiff's decedent, between 6 and 7 p.m. on the day hereinbefore stated drove to the theater where he left his wife so that she could purchase tickets while he went to the lot to park his car. He drove into the westerly drive of the lot, circled around and parked his car about 20 feet in the rear of the hamburger stand, not far from the easterly driveway. A witness who at the time was a stranger to decedent and his family parked his car at approximately the same time. He testified that while walking along Kenilworth avenue toward Woodward avenue, he saw decedent get out of his car and start toward Kenilworth avenue and fall after taking a few steps, his feet going out from under him. The witness went over to pick up decedent and saw that he had fallen into a hole. He summoned decedent's wife from the theater, helped decedent to his car, accompanied him and his wife to their home where a doctor and decedent's two sons were called. The witness further stated that the hole into which decedent fell was 7 to 8 feet long and 5 to 6 feet wide and of an irregular oblong shape; that it was in the center of the easterly drive and about 10 to 15 feet

south of the end of the cement; that it was filled in with snow and covered with a thin crust of ice, under which there was more snow; that decedent broke the ice crust over the hole where he fell; that the hole was about a foot and a half deep with almost perpendicular sides; that the snow covering the hole was light and feathery; that due to the snow the ground appeared practically level and it was difficult to tell, except on closer examination, that there was a hole there. The testimony of this witness as to the hole was corroborated by decedent's two sons who the same night went with the witness to the scene of the accident.

Witnesses for the defendants claim they never saw any such hole and their testimony is as clear and positive as that on behalf of plaintiff. Decedent's sons further stated that they could not see any car tracks in the snow over the hole.

It is admitted that decedent sustained a fracture of the femur bone of the left leg. Testimony shows that the decedent was placed in a fracture bed at the hospital where he remained in only one position for six weeks. He then went to a convalescent home for a week and then gradually, first with crutches and then with a cane and a special shoe equipped with a steel brace, was able to get about. Testimony shows that for many months he had a male attendant to help him. The testimony indicates that expenses of over $1,200 was incurred for hospital, X-rays, wheelchair, et cetera. The X-rays taken some time after the injury indicated that decedent made a good recovery but that he had an old injury from a previous fracture. Members of decedent's family testified that they had no recollection that decedent ever had been previously injured. The jury found both defendants guilty of negligence and awarded plaintiff $5,018.26. Defendants have appealed.

Attorneys for the theater company contend that there was insufficient evidence of negligence on the part of the defendants to go to the jury; that decedent through lack of care just slipped on the ice and was guilty of contributory negligence, and, also, that the verdict was excessive. Defendant ice company in a way also makes these claims of error. However, its main claim is that in no event should it be held liable and that it was not responsible for the condition of the lot that had been rented to the theater company.

The question of negligence on the part of defendants and of contributory negligence on the part of decedent were properly submitted to the jury. There was a sharp conflict in the testimony as to whether or not there was a hole in which decedent fell, but even if there is some doubt in our minds as to whether there ever was such a hole, it was a jury question and the verdict was amply supported by credible testimony. This is also true as to the amount of the verdict. Similar claims of the excessiveness of the verdict have been made in other cases involving different facts, but we have not interfered when the amount of damages awarded is supported by credible testimony. In this particular case decedent was invalided for over six months, suffered very great pain and inconvenience for a good part of the time, contracted hospital, nursing and medical bills of over $1,200. We cannot say that the verdict was excessive. The judge instructed the jury not to consider loss of earnings as there was no showing in that regard.

Defendants, however, claim that negligence was not proven because it was not shown that defendants were in any way responsible for the defective condition of the premises as they had no previous notice of the existence of the hole. Much stress is placed upon the case of *Goodman* v. *Theatre Park-*

*ing, Inc.,* 286 Mich. 80, where the plaintiff stepped out of a car onto some cinders and injured his ankle. We stated:

"Operator of an automobile parking lot is not an insurer of the safety of its business invitees but has duty to maintain its premises in a reasonably safe condition and not expose patrons to danger in entering or leaving the lot or in alighting from their cars. * * *

"A possessor of land is subject to liability for personal injuries to business visitors by a natural or artificial condition thereon *if he knows, or by exercise of reasonable care* could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them." (Syllabi.)

In *Oppenheim* v. *Pitcairn,* 293 Mich. 475, we held defendant was not liable for injury suffered by plaintiff whose fall was caused by the wet and slippery condition of the floor just inside of the door of defendant's railroad station and where patrons were constantly coming in from the wet and slushy streets. We, however, stated that in order to recover plaintiff must show that the character of the danger or the passage of time was such that the knowledge of the menace would have to come to the attention of a reasonably prudent owner.

In *Yarington* v. *Huck,* 218 Mich. 100, we affirmed a judgment for plaintiff who tripped and fell as she entered the door of defendant's restaurant, she claiming that she caught her foot in the hole of the runner on the floor. It was then claimed that there was no showing that a sufficient length of time had elapsed so that defendant should have known of the defect. We held that evidence of the defect was sufficient to raise a jury question as to defendant's negligence, for the character of the defect alone would raise a question of the knowledge of defendant. Also see *Hulett* v. *Great Atlantic & Pacific Tea*

*Co.,* 299 Mich. 59. The existence of the hole of the size, as testified to, was such that a jury might well believe that it had existed for some considerable time. There was no showing of a sudden cave-in, any disturbances of the ground or subsidence from an unusual cause. The jury could well conclude that the hole must have existed for some time. The court instructed the jury:

"But if a dangerous condition existed under circumstances that by the exercise of reasonable care defendants should have known of its existence, then the law imputes the knowledge thereof to the defendants. If in the exercise of reasonable care they should have known of the existence of the hole which plaintiff claims existed in the parking lot, then that is the same as actual knowledge, but under the law defendants must exercise reasonable care for the safety of their patrons. * * *

"Something has been said in discussing this case with you about a hole, and constructive notice of the existence of this hole. A hole in itself, of course, means something that you can see or look at and observe. Constructive notice is the kind of notice which the law imputes to a party on the theory, if he did not know it, he should have known it. In this case members of the jury, if that hole was there—and, of course, that is for you to determine—if that hole was there, then it is for you to say whether or not it was of such character that the defendant knew it or should have known it. And if you find that that is the situation, then they are charged by law with what we call constructive notice, and, for all legal purposes, they knew it; the distinction between actual and constructive being that actual is what a person may observe by the ordinary faculties possessed by all humans; constructive notice is the kind imposed by law. And in this case, if there was a hole there at all, then you must determine whether or not it was of such a character that either these

defendants knew it, or, if they did not know, they should have known it."

The ice company denies its liability to the decedent who was an invitee of the theater company. The lease between the ice company and the theater company provided that the theater company would keep the premises in good repair and that at the expiration of the term would deliver up the same in like condition as when taken, reasonable use and wear thereof and damages of the elements excepted. Another provision of the lease provided that the theater company release the ice company from all obligations for repair and from all claims that might arise from any defective or alleged defective condition. The provisions of the lease plainly indicate that it was on a form used for rental of a building. It contains a covenant that the tenant will not obstruct the use of passages or other easements provided for the common use of the occupants of the structure, of which the demised premises are a part, or any adjoining structure having a dominant easement or severalty. The instant action sounds in tort and it has nothing to do with the contract or relationship between the defendants. Testimony shows that both the ice company and the occupants of the hamburger stand used the passageway between the two buildings; it was kept for the joint use of the ice company, its tenant, and the theater company. Testimony shows that the location of the hole was near the rear of the buildings used by the hamburger stand and the ice company. The jury had a right to believe that it was sufficiently near so that vehicles using the passageway would pass over the place where the hole was located. It is not a case where the landlord has rented the entire premises to one person who goes into sole possession, but it is one where the landlord re-

served buildings on the property and the joint right of ingress and egress with the tenant. The passageway was so used. There are many somewhat similar cases which have been called to our attention but they present different factual situations. They are of no aid to us. Notwithstanding the research of counsel for defendants, as shown by their able briefs, as well as our own, our attention has not been called to a case with like facts.

This is not a case where either the tenant or the landlord had exclusive control and possession of common passageways. The facts here show that the defendants each had control and possession. Liability to third persons lawfully on the premises for injuries due to the defective condition of the premises depends on control and possession of the premises, see *Nezworski* v. *Mazanec,* 301 Mich. 43; thus both defendants are liable to plaintiff. Plaintiff's decedent was the invitee of the defendant theater company and in using this driveway also became the invitee of the defendant ice company. In the case of *Johnston* v. *De La Guerra Properties, Inc.,* 28 Cal. (2d) 394 (170 Pac. [2d] 5), where the facts are somewhat different, the court stated as follows:

"One who leases a part of the premises, retaining control of other portions such as common walks or passages which the tenant is entitled to use, is subject to liability to persons lawfully on the land with the consent of the tenant for damages caused by a dangerous condition existing on the part under the owner's control, if by reasonable care he could have discovered the condition and made it safe. *Bellon* v. *Silver Gate Theatres, Inc.,* 4 Cal. (2d) 1, 14 (47 Pac. [2d] 462); *Spore* v. *Washington,* 96 Cal. App. 345 (274 Pac. 407); see *Brown* v. *Pepperdine,* 53 Cal. App. 334, 336 (200 Pac. 36); 2 Restatement, Torts, § 360; Prosser on Torts (1941), pp. 656, 657; 32 Am. Jur. p. 561; 15 Cal. Jur. p. 741. According-

ly, invitees of the tenant are regarded as being invitees of the owner while on passageways which invitees of the tenant have a right to use and which are under the owner's control. (*Spore* v. *Washington,* 96 Cal. App. 345, at page 350 [274 Pac. 407]); see 15 Cal. Jur. p. 741."

Although counsel for defendant ice company claims this is dictum, we adopt it as the correct statement of the law in the instant case.

The judgment is affirmed, with costs to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.