SHACKETT v SCHWARTZ

1. JUDGMENT—JUDGMENT NOTWITHSTANDING VERDICT.

   The granting of a motion for a judgment notwithstanding the verdict is appropriate only if the facts taken inferentially in favor of the nonmoving party preclude judgment for that nonmoving party as a matter of law.

2. LANDLORD AND TENANT—LEASED PREMISES—DUTY TO MAINTAIN PREMISES.

   At common law, a lessor, absent agreement to the contrary, surrenders possession of the leased premises and holds only a reversionary interest and is under no obligation to look after or keep in repair premises over which he has no control; however, a landlord has a duty to keep in safe condition any portion of a building under his control.

3. NEGLIGENCE—LANDLORD AND TENANT—LEASES—RESERVATION OF CONTROL—DUTY TO MAINTAIN PREMISES.

   An owner of premises who leases portions thereof to different tenants and expressly or impliedly reserves other parts thereof, such as entrances, halls, stairways, porches, or walks, for the common use of different tenants, has a duty to exercise reasonable care to keep safe such parts over which he so reserves control.

4. NEGLIGENCE—LANDLORD AND TENANT—CONTROL OVER PREMISES— DUTY TO MAINTAIN PREMISES.

   A landlord who, by virtue of a lease, assumes that degree of

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments §§ 106–108, 111.

Practice and procedure with respect to motions for judgment notwithstanding or in default of verdict under Federal Civil Procedure Rule 50(b) or like state provisions. 69 ALR2d 449.

[2–5] 49 Am Jur 2d, Landlord and Tenant §§ 767, 771, 772.

[3–5] 49 Am Jur 2d, Landlord and Tenant § 805 et seq.

Landlord's liability for injury or death due to defects in areas of building (other than stairways) used in common by tenants. 65 ALR3d 14.

Landlord's liability for injury or death caused by defective condition of interior steps or stairways used in common by tenants. 67 ALR3d 587.

obligation with respect to the leased property as to indicate that control rests in him will be held liable for any breach of the duty to maintain the premises in a reasonably safe condition.

5. NEGLIGENCE—SLIP AND FALL—LANDLORD AND TENANT—LEASED PREMISES—RESPONSIBILITY FOR SAFE CONDITION.

A landlord, not the tenant, is responsible for maintaining in safe condition a vacant area adjacent to a partially leased building and is thereby liable to a plaintiff who was injured because of an unsafe condition where the lease states that the vacant area is to be used in common with other tenants and that the tenant has exclusive control over only those rooms in the building enumerated in the lease; the fact that the tenant was the only occupant of the building at the time of the accident should not change the result.

Appeal from Wayne, Charles S. Farmer, J. Submitted April 20, 1977, at Detroit. (Docket No. 28431.) Decided August 22, 1977.

Complaint by Ann Shackett and David Shackett against Charles E. Schwartz and Jack H. Kaufman for damages for injuries suffered in a slip and fall. Each defendant filed a cross-claim against the other. The jury returned a verdict in favor of plaintiffs against both defendants, however, the trial court's subsequent orders granted to defendant Schwartz a judgment notwithstanding the verdict and a judgment against defendant Kaufman only. Defendant Kaufman appeals. Reversed.

*Sullivan, Ranger, Ward & Bone,* for defendant Charles E. Schwartz.

*Allen & Allen,* for defendant Jack H. Kaufman.

Before: V. J. BRENNAN, P. J., and D. F. WALSH and J. N. O'BRIEN,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

J. N. O'Brien, J. Jack H. Kaufman was a tenant in an office building owned by Charles E. Schwartz. Kaufman is a doctor. One of Kaufman's patients slipped, fell and injured herself in the parking lot behind the office in question. She brought action against both, alleging joint and several liability.

The lease here devised only a portion of the premises to Kaufman. The other portion of the building was vacant at the time of the accident. The lease states that the vacant area at the rear of the building is to be used in common with other tenants. This portion would appear to be the parking lot.

The lease requires the lessee to maintain his own premises, and the lessor the roof and outer walls. At trial, Kaufman stated that he did not maintain the parking lot. Schwartz testified he made no arrangements for parking lot maintenance.

The defendant-appellant, Kaufman, filed a cross-claim against the defendant-appellee, Schwartz, alleging that Schwartz was obligated to maintain the parking lot.

Schwartz filed a cross-claim against Kaufman on April 2, 1970. Schwartz claimed that the parking lot was in the exclusive control of Kaufman. There is no record of the disposition of these claims. The case then came to trial.

At trial Schwartz moved for a directed verdict. The basis of the motion was that he had no control of the parking lot or duty to maintain it.

Kaufman also moved for a directed verdict. The basis of the motion was that the parking lot was a "common area" under the control of the lessor, Schwartz.

The trial court took the motions under advisement.

Both Kaufman and Schwartz again moved for directed verdicts after the proofs had been completed. The motions as to directed verdicts on the cross-claims were reserved, by the court, until after the jury's verdict was returned.

The trial court instructed the jury on the question of control of the parking lot. The jury returned a verdict for the plaintiff against both defendants for $25,000.

The opinion of the trial court issued thereafter:

"The records, files and transcript of the testimony offered at the trial of this case indicate that the control of the property in question and the parking lot where the plaintiff fell and incurred her injuries were under the exclusive possession and control of Jack H. Kaufman, the lessee.

"This Court further finds that absent any agreement between the tenant, Jack Kaufman, and the owner, Charles Schwartz, regulating or stipulating to liability and duty of the parties as to their respective responsibilities, the prevailing law must be applied that *the party in control and possession of the property is responsible, and therefore liable for injuries to third-party invitees.* This case does not fall within the exception, as there is no agreement, nor is there evidence of control of the premises in Mr. Schwartz, the owner.

"The cases relied on by both parties; *Siegel v Detroit City Ice & Fuel Company,* 324 Mich App 205 [36 NW2d 719 (1949)], *Lipsitz v Schechter,* 377 Mich App 685 [142 NW2d 1 (1966)] and *Quinlivan v The Great Atlantic & Pacific Tea Company, Inc,* 395 Mich App 244 [235 NW2d 732 (1975)], are supportive of the law and findings in this opinion.

"Please present an order conforming with this opinion within ten days, for the Court's signature." (Emphasis in original.)

Due to the procedural peculiarities in this case and the trial court's wording, it seems it is really a judgment notwithstanding the verdict (JNOV) and will therefore be treated as such.

The standard for the granting of a motion for JNOV was stated as follows in *Vice v The Great Atlantic & Pacific Tea Co,* 53 Mich App 140, 141; 218 NW2d 766 (1974):

"Judgment notwithstanding the verdict on defendant's motion was appropriate only if the facts taken inferentially in favor of plaintiffs preclude judgment for plaintiffs as a matter of law. *Huhtala v Anderson,* 15 Mich App 693; 167 NW2d 352 (1969). *Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965)."

Do the facts of this case, taken in favor of the tenant, Kaufman, preclude liability as a matter of law?

A general statement of the landlord's duties is stated as follows in *Lipsitz v Schechter,* 377 Mich 685, 687–688; 142 NW2d 1 (1966):

"The first question is the nature of the duty owed by defendants to plaintiff. *At common law, a landlord's duty depends upon the facts and circumstances of each case. The element of control is of prime importance. Huey v Barton,* 328 Mich 584, 588 [44 NW2d 132 (1950)]; 52 CJS, Landlord and Tenant, § 427, p 100. The common-law duty is predicated upon the concept that a lease is equivalent to a sale. *The lessor, absent agreement to the contrary, surrenders possession and holds only a reversionary interest. Under such circumstances, he is under no obligation to look after or keep in repair premises over which he has no control.* Prosser, Torts (3d ed), § 63, pp 411, 412; Harkrider, Tort Liability of a Landlord, 26 Mich L Rev 260, 383.

"*An exception to the general lack of obligation is that a landlord has a duty to keep in safe condition any portion of a building under his control. Butler v Wat-*

*son,* 193 Mich 322, 328 [159 NW 507 (1916)] (16 NCCA 1013); Annotation. Landlord's liability for injury or death due to defects in exterior stairs, passageways, areas, or structures used in common by tenants, 26 ALR2d 468, 531. The duty extends to a tenant's invitees, such as plaintiff. *Siegel v Detroit City Ice & Fuel Company,* 324 Mich 205, 214, 215." (Emphasis added.)

In *Samson v Saginaw Professional Building, Inc,* 393 Mich 393, 407; 224 NW2d 843 (1975), the Court also addressed the issue as follows:

"However, the landlord has retained his responsibility for the common areas of the building which are not leased to his tenants. The common areas such as the halls, lobby, stairs, elevators, etc., are leased to no individual tenant and remain the responsibility of the landlord. It is his responsibility to insure that these areas are kept in good repair and reasonably safe for the use of his tenants and invitees.

"The existence of this relationship between the defendant and its tenants and invitees placed a duty upon the landlord to protect them from unreasonable risk of physical harm. 2 Restatement Torts, 2d, § 314A(3)."

In this case, the lease is silent concerning any duty of the landlord to maintain the parking lot. The question is, then, whether or not the landlord retained control over the parking lot. However, the landlord here, Schwartz, did not lease the entire building to Kaufman, but only a portion thereof. The general rule in cases such as this is stated in 49 Am Jur 2d, Landlord and Tenant, § 805, pp 760–761:

"It is generally held that *where the owner of premises leases parts thereof to different tenants, and expressly or impliedly reserves other parts thereof, such as entrances, halls, stairways, porches, walks, etc., for the common use of different tenants, it is his duty to*

*exercise reasonable care to keep safe such parts of which he so reserves control,* and if he is negligent in this regard, and a personal injury results by reason thereof to a tenant or to a person there in the right of the tenant, he is liable, provided that the injury occurs while such part of the premises is being used in the manner intended." (Emphasis added.)

The issue of what is sufficient control to render the landlord liable was extensively discussed in *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244, 267; 235 NW2d 732 (1975):

"In *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399; 97 NW2d 90 (1959), the Court distinguished *Siegel* on its facts, but nonetheless approved the proposition that 'control and possession' of the premises is critical in determining whether landlord, tenant, or both will be liable for injuries sustained on the premises.

"The legal effect of the doctrine of *Siegel* and *Bluemer* was accurately reported as follows by the Court of Appeals in *Whinnen v 231 Corp,* 49 Mich App 371; 212 NW2d 297 (1973):

" 'The consensus holding seems to be that *where a landlord or a tenant has, by virtue of a lease, assumed that degree of obligation with respect to the demised property as to indicate that control rests in him he will be held to answer for any breach of the duty to maintain the premises in a reasonably safe condition. Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399; 97 NW2d 90 (1959) and *Siegel v Detroit City Ice & Fuel Co,* 324 Mich 205; 36 NW2d 719 (1949).' *Supra,* 375." (Emphasis added.)

*Quinlivan* involved the relative liability of a lessee and lessor in a shopping center for a slip and fall in the parking lot. In discussing the relative liabilities, the Court said as follows:

"While *Siegel* and *Bluemer* are of significance to

resolution of this case, the governing principle of law is more aptly framed as follows:

" 'Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels * * * which, as between the two, it was the other's duty to make safe, he is entitled to restitution from [i.e., to be indemnified by] the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.' Restatement, Restitution, § 95, p 415.

"This rule is noted, and the following comments are made with respect to its application, in 41 Am Jur 2d, Indemnity, § 17, p 704:

" 'In accord with this rule are cases holding that where the loss results from the indemnitee's negligent failure to make safe a dangerous condition created by the indemnitor, and does not result from the indemnitee's own sole negligence, indemnity is not barred. But where the indemnitee's acquiescence in the dangerous condition is shown by long-continued awareness of a dangerous situation on his part without the taking of any corrective measures or calling upon the indemnitor to do so, indemnity will not be permitted,' " 395 Mich at 267–268.

The Court went on to explain the relationship between "control" and "duty to make safe", as follows:

"There is a clear relationship between the 'control and possession' principle of *Siegel, Bluemer,* and *Whinnen* and the Restatement 'duty to make safe'. The land or property owner's bundle of possessory responsibilities may be diminished by the 'loaning' of one or several of these responsibilities. This 'loaning' gives a quantum of 'control and possession' to another party. If such quantum of control and possession confers responsibility for an aspect of ownership which gives rise to liability then a 'duty to make safe' will be found to exist." 395 Mich at 269.

The lease here demised only a portion of the premises to Kaufman. The other portion of the building was vacant at the time of the accident. The lease states that the vacant area at the rear of the building is to be used in common with other tenants. This portion would appear to be the parking lot.

While it is true that Kaufman was the only tenant, the provisions of the lease stated the amount of control of the premises surrendered under the lease. The fact that Kaufman was the only tenant should not change the result.

It would seem clear that under the general rule the landlord is responsible for common areas. The fact that there were no other tenants using the common area should be of no consequence.

In *Rice v Ziegler,* 128 Ohio St 239; 190 NE 560 (1934), the plaintiff, a tenant, rented a room from the defendant. The plaintiff was injured by a defective stair. The plaintiff was the only tenant at the time of the accident. The Court, in holding the defendant liable, stated as follows:

"It is of course true that at the time the plaintiff was injured the second floor was temporarily vacant, but this fact cannot be regarded as changing the situation.

"In the case of *Farley v Byers,* 106 Minn 260, 118 NW 1023, 130 Am St Rep 613 [1908], it was held as follows:

" 'Where a porch or stairway is used in common by the different occupants of a tenement house or flat building, the landlord will be presumed to have reserved possession thereof for the benefit of all the tenants, and he is under obligation to all parties having occasion to use the premises to exercise ordinary care to keep the same in repair.' " 128 Ohio St at 241.

As stated in *Lipsitz, supra,* the basis of the

transfer of control is that a lease is equivalent to a sale. Here, the parking lot was not in the exclusive control of Kaufman, but in common with the other tenants. The fact that, at the time of the accident, Kaufman was the only tenant should not change the result. The lease taken as a whole shows that Kaufman had exclusive control of *only* the rooms enumerated in the lease.

Here, the lease is silent as to any allocation of risk. Since the lease did not transfer any right of control over the parking lot to the tenant, Kaufman, risk should remain with Schwartz, the landlord.

JNOV should have been granted for Kaufman, since it is clear that the parking lot was a common area not under Kaufman's control.

Reversed. Costs awarded to Kaufman.