WILLIAMS v CITY OF DETROIT

Docket No. 64944. Submitted May 3, 1983, at Detroit.—Decided July 20, 1983.

John Williams was shot while attending an Autorama show held at Cobo Hall in Detroit. The assault took place in an area of Cobo Hall which had been leased to Promotions, Inc., and was committed by Lee Davidson, an Autorama exhibitor. John Williams and his wife, Du Renda, brought an action in Wayne Circuit Court against the City of Detroit, Lee Davidson, Promotions, Inc., the Michigan Hot Rod Association, and Star Security Service, Inc. The claim against the City of Detroit alleged that the City of Detroit had a nondelegable duty to furnish security to the business invitees of its tenants and that the city breached that duty. The city moved for summary judgment on the basis that plaintiffs failed to state a claim upon which relief could be granted, claiming that it owed no duty to its tenant's invitees within the area of the leased premises and that the lease specifically provided that security within the leased premises was the responsibility of its tenant. John H. Hausner, J., granted the city's motion for summary judgment. Plaintiffs appeal. *Held:*

The City of Detroit had no duty to provide security in those areas of Cobo Hall which had been leased and over which, pursuant to the provisions of the lease, the tenant had exclusive possession and control and the obligation to provide security. Since the alleged assault took place in a leased area rather than a common area, the trial court properly granted the city's motion for summary judgment on the basis of the failure to state a claim on which relief could be granted.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading §§ 71 *et seq.,* 230 *et seq.*

[2, 3] 49 Am Jur 2d, Landlord and Tenant §§ 780, 805, 810.

Landlord's liability for injury or death due to defects in areas of building (other than stairways) used in common by tenants. 65 ALR3d 14.

Liability for injury to guest in home or similar premises. 25 ALR2d 598.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM — PLEADINGS.

   A motion for summary judgment for failure to state a claim upon which relief can be granted tests the pleadings to see whether the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recover; all well-pleaded allegations in the complaint are assumed to be true (GCR 1963, 117.2[1]).

2. LANDLORD AND TENANT — LEASES — REPAIR OF PREMISES — COMMON AREAS — INVITEES.

   A landlord, absent an agreement to the contrary, generally surrenders possession of a leasehold and holds only a reversionary interest and is thus held to have no obligations to maintain the premises in repair; the landlord does have the duty to maintain in a safe condition those areas of the leasehold that remain under his control and that duty extends to invitees of his tenants.

3. LANDLORD AND TENANT — LEASES — TORTS — INVITEES.

   A landlord is not liable to an invitee of a tenant, on the basis of a failure to provide adequate security, for injuries incurred by reason of an assault on the invitee in an area of the premises which had been leased where the tenant, by the terms of the lease, had the obligation to provide security in the leased areas.

*Law Offices of Joseph Crystal, P.C.* (by *Robert J. Minnett, Jr.),* for plaintiffs.

*David N. Smokler,* Assistant Corporation Counsel, for the City of Detroit.

Before: GRIBBS, P.J., and BRONSON and BEASLEY, JJ.

BEASLEY, J. On January 7, 1979, plaintiff, John Williams, an alleged business invitee at an Autorama show held at Cobo Hall in Detroit, sustained a gunshot wound when an Autorama exhibitor, Lee Davidson, who claimed he had been harassed,

assaulted plaintiff with a handgun. Plaintiff[1] brought suit against defendant, City of Detroit, alleging that defendant breached its duty to provide adequate safety and protection for patrons of the show.[2] After hearing oral arguments on defendant's motion for summary judgment, the trial court held that defendant did not have a duty to provide security within the area that it leased to Promotions, Inc., the promoter of the event. From the order granting summary judgment, plaintiff appeals as of right.

The parties to this appeal are in agreement as to the following facts: (1) defendant leased four exhibit halls in Cobo Hall to Promotions, Inc., to hold the 1979 Autorama show; (2) Star Security Service, Inc., was hired by Promotions to furnish security for the leased premises during the event; (3) plaintiff was shot while in one of the leased exhibit halls; and (4) the Detroit Police Department patrolled the common areas of Cobo Hall during the event.

A permit issued by defendant to Promotions contained numerous rules, regulations, and general conditions concerning the use of Cobo Hall exhibit areas. Two of these conditions provided:

"(4) The Permittee agrees to furnish a sufficient number of ushers, ticket takers, special policemen, doorkeepers or other employees to properly handle and govern the conduct of all persons in attendance at functions conducted by the Permittee, and to adopt, promulgate and enforce rules and regulations governing the conduct of such attendants. It is further understood

---

[1] Also included as a plaintiff was Du Renda Williams, the wife of John Williams, whose cause of action was based on a loss of consortium claim.

[2] Joined as defendants in this action were Lee Davidson, the assailant, Promotions, Inc., Star Security Service, Inc., and Michigan Hot Rod Association.

and agreed that such attendants shall for all purposes be the agents of the Permittee.

\*    \*    \*

"(7) The Permittee shall have the complete control of so much of the premises exclusively granted to it during the periods aforesaid, and of admission to the portion of such premises during such periods subject to the requirements of any City Ordinances or State Laws including the Civic Center Department Rules and Regulations."

In its motion for summary judgment, defendant city contended that under GCR 1963, 117.2(1), plaintiff failed to state a claim upon which relief could be granted because defendant's common-law duty, as the owner of the building, to provide protection and security extended only to the common areas of the building. Defendant said that since plaintiff sustained injuries in an area leased to and controlled by the tenant, Promotions, Inc., defendant did not owe a duty to plaintiff to provide security in that area. Furthermore, defendant asserted that the contract between it and Promotions, in fact, contained a clause requiring Promotions to provide security inside the exhibit halls.

In response to defendant's motion for summary judgment, plaintiff argued that defendant had a nondelegable duty to afford security to its tenant's invitees and that the firm that provided security inside the exhibit areas acted as defendant's agent.

In granting defendant's motion for summary judgment on the basis that defendant did not owe a duty to its tenant's business invitees within the leased area, the trial court held that (1) the assailant, who was an exhibitor at the automobile show, had the right to be on the leased premises, (2) plaintiff's injuries did not occur in a common area of the facility; rather, they occurred in one of the

leased exhibit halls, and (3) whether defendant had a duty to provide security in the leased area was a question of law, not one of fact.

In *Keiswetter v City of Petoskey*,[3] we discussed the standard of review for summary judgment motions based on the plaintiff's failure to state a claim upon which relief can be granted:

"A motion for summary judgment under GCR 1963, 117.2(1) is the modern equivalent of a demurrer under common law pleading, which more recently has been designated as a motion to dismiss. The test is whether, on the pleadings, plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. All well-pleaded allegations in the complaint are assumed to be true." (Footnotes omitted.)

The general rule is that a landlord, absent an agreement to the contrary, surrenders possession of the leasehold and holds only a reversionary interest and, thus, does not have an obligation to maintain the premises in repair.[4] An exception to this principle is that a landlord has a duty to maintain in a safe condition any portion of the leasehold which is under his control, such as elevators, porches, stairwells, and walks.[5] This duty extends to the invitees of his tenants.[6]

On two occasions, in departures from previous precedent, the Michigan Supreme Court has, under differing factual settings, broadened the duty

[3] 124 Mich App 590, 593; 335 NW2d 94 (1983).

[4] *Lipsitz v Schechter*, 377 Mich 685, 687; 142 NW2d 1 (1966); Prosser, Torts (4th ed), § 63, pp 399-400.

[5] *Butler v Watson*, 193 Mich 322, 328; 159 NW 507 (1916); 2 Restatement Torts, 2d, § 360, pp 250-253.

[6] *Siegel v Detroit City Ice & Fuel Co*, 324 Mich 205, 214-215; 36 NW2d 719 (1949); 49 Am Jur 2d, Landlord and Tenant, §§ 810-811, pp 769-772.

imposed on landlords to protect tenants and/or tenants' invitees from potential criminal activities.

In *Johnston v Harris,*[7] a tenant was "mugged" in an unlocked, unlighted vestibule of the building, which was located in a high crime area. The *Johnston* Court held that the landlord's duty of care extends to foreseeable criminal activities by third parties within the common areas of the dwelling unit, so as to make the landlord liable for the injuries inflicted by the mugger.

In the split decision in *Samson v Saginaw Professional Building, Inc,*[8] the Court held that the landlord of a commercial office building which rented space to a state mental health clinic owed a duty to tenants and their invitees to take appropriate steps for their security.[9] In upholding a jury verdict against the landlord in favor of a secretary employed by a tenant on the theory that the landlord somehow failed to take appropriate measures to safeguard the building's occupants from foreseeable criminal actions by patients and visitors who visited the medical clinic, the *Samson* majority set forth the duty owed by a landlord to his tenants and visitors in the common areas of the leased premises:

"However, the landlord has retained his responsibility for the common areas of the building which are not leased to his tenants. The common areas such as the

---

[7] 387 Mich 569; 198 NW2d 409 (1972). The hard issue was whether a defective lock or inadequate lighting was the proximate cause of the injuries inflicted by the mugger. The Supreme Court said the landlord's derelictions were "conducive" to the mugging.

[8] 393 Mich 393; 224 NW2d 843 (1975).

[9] Justice T. M. KAVANAGH, the author of the opinion, suggests that the duty may have been so slight as only to require a suggestion to "office personnel to ride the elevators in pairs". *Samson, supra,* p 409. However, the fact was that plaintiff, a woman, was stabbed by a mental patient on "convalescent leave" who was also a defendant and who had previously slashed a woman in her home.

halls, lobby, stairs, elevators, etc., are leased to no individual tenant and remain the responsibility of the landlord. It is his responsibility to insure that these areas are kept in good repair and reasonably safe for the use of his tenants and invitees.

"The existence of this relationship between the defendant and its tenants and invitees placed a duty upon the landlord to protect them from unreasonable risk of physical harm. 2 Restatement Torts, 2d, § 314A(3)."[10]

However, even the majority in *Samson* apparently would not extend the landlord's duty to incidents which occurred within the boundaries of the leased premises, saying·

"Defendant leased its premises to the Mental Health Clinic. For this act, by itself, our law imposes no liability and indeed should impose none. Whether or not the landlord retains any responsibility for actions which occur within the confines of the now leased premises is not now before this Court and need not be answered. It would appear, however, that he would not retain any responsibility for such actions except in the most unusual circumstances."[11]

It can be argued that the *Johnston* and *Samson* decisions holding the landlords liable for injuries sustained by tenants and visitors are based on the premise that the assailants were on the premises as a consequence of the failure of the landlords to take sufficient steps to keep the common areas safe. In contrast, in the within case, plaintiff was injured in an area over which defendant's tenant had exclusive possession and control.[12] Therefore,

---

[10] *Samson, supra,* p 407.

[11] *Samson, supra,* p 407. See, generally, Anno: *Landlord's Obligation To Protect Tenant Against Criminal Activities of Third Persons,* 43 ALR3d 331.

[12] While the following condition of the lease allows defendant, the landlord, access to the leased premises, we do not construe it as

defendant should not be held liable unless defendant exercised control over the security of the leased premises.

According to Professor Prosser, a landlord has the duty, in order to prevent unreasonable risk of harm to the public, to inspect and repair any defects on the premises before he transfers possession.[13] But, this doctrine is not applicable to the instant case, as plaintiff does not assert a failure to inspect and repair prior to leasing the premises; rather, plaintiff's claim is predicated upon a failure to provide adequate security during the brief period of the lease.

We note that the contract between defendant city and its tenant, Promotions, Inc., required the latter to provide security for its business invitees. In fact, the tenant hired Star Security Service for this function. As a lessor without possession or control of the leased premises, defendant was not liable for the negligence, if any, of the security firm hired by its tenant.[14] The trial court correctly granted defendant's motion for summary judgment under GCR 1963, 117.2(1).

Affirmed.

---

compromising the tenant's exclusive possession and control of the exhibit areas:

"(22) The custodian of the Building, watchmen and maintenance crew of the Owner shall have free access at all times to all space occupied by Permittee."

[13] Prosser, Torts (4th ed), § 63, p 403. See, also, 2 Restatement Torts, 2d, § 379, pp 281-283.

[14] Possessory rights can be transferred to another, thereby delegating the duty to render the premises safe while absolving the transferor of liability. See *Merritt v Nickelson,* 407 Mich 544, 552-553; 287 NW2d 178 (1980); *Siegel v Detroit City Ice & Fuel Co, supra.*