*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LYNETTE LOVE,

      Plaintiff-Appellee/Cross-Appellant,

v

ALASKA AIRLINES, INC.,

      Defendant-Appellant/Cross-Appellee,

and

WAYNE COUNTY AIRPORT AUTHORITY,

      Defendant,

and

DETROIT AIRLINES NORTH TERMINAL
CONSORTIUM, also known as DANTEC,

      Defendant/Cross-Appellee.

UNPUBLISHED
January 09, 2025
3:39 PM

No. 364791
Wayne Circuit Court
LC No. 20-000200-NO

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

      Defendant, Alaska Airlines, Inc., appeals by leave granted[1] the trial court's order granting in part and denying in part its motion for summary disposition under MCR 2.116(C)(10). Plaintiff, Lynette Love, has filed a cross-appeal, challenging the same order. For the reasons set forth in this opinion, we affirm.

---

[1] *Love v Alaska Airlines, Inc*, unpublished order of the Court of Appeals, entered June 30, 2023 (Docket No. 364791).

# I.  FACTUAL BACKGROUND

In September 2018, plaintiff was employed by G2 Secure Staffing and working as a customer service ticket and boarding agent for defendant in the North Terminal of Detroit Metro Airport.  At that time, defendant had access to various areas of the North Terminal pursuant to its lease agreement with the owner of the terminal, the Wayne County Airport Authority (WCAA).  Under the lease agreement, the "Leased Premises" is defined as the "space, improvements and facilities in the North Terminal identified on Exhibit C-1."  Exhibit C-1 displays several hundred square feet labeled "Operations Space" and "Baggage Service Office."  The lease agreement also grants defendant the "right to use the Common Use Facilities in common with all other air carriers operating Air Transportation businesses in the North Terminal."  The Common Use Facilities are defined as the "common use gates, common use ticket counters and common use passenger processing system in the North Terminal, which are identified on Exhibit C-3[.]"  Exhibit C-3 displays "Ticket Counters" and "Gate Holdrooms."

This case arises from an incident that occurred while plaintiff was working at a ticket counter that defendant was using in the North Terminal.  The ticket counter was configured somewhat differently from other counters in the North Terminal.  For each ticket-counter workstation, there were conveyor belts running on both sides from the front of the workstation to the back.  These workstation conveyor belts were used to feed the customer's baggage to a main conveyor belt running across the back of the entire ticket counter.  Because of this configuration, workers at this ticket counter had to step onto one of the workstation conveyor belts in order to enter or exit their workstation.  The workstation conveyor belts operated independently of one another and moved only when the worker pushed a button on the adjacent workstation.

Defendant's workers were occasionally required to access supplies—like luggage tags, bags for car seats, and traveler forms—contained on a supply cart located in one of the workstations.  Workers could access the supply cart in one of two ways: (1) by stepping onto their own workstation conveyor belt and into the customer area, walking down to the workstation that contained the supply cart, and stepping onto that workstation conveyor belt to reenter the ticket counter; or (2) by traversing each of the workstation conveyor belts until the worker reached the workstation with the supply cart.  According to defendant, the first of these methods was "recommended," but the second was also "allowed."  For workers utilizing this second, "cross-over" method, the protocol was that the worker, before crossing over a workstation conveyor belt, would notify their coworker at that workstation that they are crossing behind them and then wait to step onto the workstation conveyor belt until receiving verbal confirmation from the coworker.

In September 2018, plaintiff was working at the ticket counter and needed supplies from the supply cart several workstations over.  According to plaintiff, she accessed the cart using the cross-over method and followed the protocol of receiving verbal confirmation from her coworkers before traversing their workstation conveyor belts.  On her return trip, a coworker activated the conveyor belt while plaintiff was stepping onto it, causing plaintiff to fall to the ground and sustain injuries to her head and right side.  The parties dispute whether plaintiff obtained verbal confirmation from her coworker before stepping onto the conveyor belt.

# II.  PROCEDURAL HISTORY

Plaintiff brought premises-liability and general-negligence claims against defendant and Dantec, a consortium formed by several airline carriers to provide management services to the North Terminal. Relevant to this appeal, plaintiff alleged, in support of her premises-liability claim against defendant, that defendant had a duty to maintain its premises as a reasonably prudent person would and that defendant knew of a dangerous and hazardous condition on the premises but failed to correct or warn plaintiff of it. Plaintiff reasserted those allegations in support of her general-negligence claim against defendant, and additionally asserted that defendant breached its duty of care to her by, among other things, failing to have adequate supplies at workstations, failing to train and require workers to visually inspect the conveyor belt before activating it, instructing workers not to enter the customer area in order to travel amongst workstations, operating a work area that required workers to violate safe practices, and failing to design the work area in a way that would not require workers to walk on a conveyor belt.

After discovery, defendant and Dantec each moved for summary disposition under MCR 2.116(C)(10). Defendant argued that plaintiff's premises-liability claim should be dismissed because it was based on an alleged defect that was open and obvious, and because defendant did not have possession and control of the premises. As to plaintiff's negligence claim, defendant argued that it should also be dismissed because the claim sounded exclusively in premises liability. In response, plaintiff argued that summary disposition on her premises-liability claim was not warranted because the record showed defendant had possession and control of the premises at issue and that the alleged hazard was not open and obvious and, even if it were, had special aspects. Nor, plaintiff argued, had defendant shown it was entitled to summary disposition on her general-negligence claim because, contrary to defendant's argument, the claim did not sound exclusively in premises liability but instead comprised allegations regarding the unsafe manner in which defendant chose to organize and operate its workplace and to train and instruct its workers. On September 16, 2022, the trial court issued a written order granting in part and denying in part defendant's motion. The order dismissed plaintiff's premises-liability claim against defendant "based on the lack of possession/control and open and obvious," but concluded that "[p]laintiff's negligence claim survives as there remains a question of fact whether [defendant's] policy of traversing the conveyor belt in the face of safer options constituted general negligence." The same day, the trial court also issued a written order dismissing both of plaintiff's claims against Dantec.

After unsuccessfully moving for reconsideration, defendant sought leave to appeal, which this Court granted, limited to the issues raised in the application. Plaintiff filed a cross-appeal as to the trial court's grant of summary disposition to defendant on her premises-liability claim. After defendant and plaintiff filed their appellate briefs, Dantec filed an appellate brief asking this Court to affirm the trial court's order dismissing plaintiff's claims against Dantec. Dantec argued that, because neither plaintiff nor defendant addressed the trial court's order regarding Dantec, the doctrine of res judicata prevented them from challenging the order in future appeals. Plaintiff argued in response that this Court lacked jurisdiction over the trial court's order regarding Dantec and that there was no merit to the res judicata argument.

## III. JURISDICTION

To start, we agree with plaintiff that Dantec's bid for relief is outside the proper scope of this appeal. "The jurisdiction of the Court of Appeals is governed by statute and court rule." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). MCR 7.205(E)(4) provides

that, unless otherwise ordered, an appeal by leave granted is "limited to the issues raised in the application and supporting brief." Citing that court rule, this Court's order granting defendant's application stated the same. Defendant's application was limited to the trial court's order granting in part and denying in part its motion for summary disposition, and neither the application nor plaintiff's cross-appeal takes issue with the trial court's order dismissing Dantec. Accordingly, this Court lacks jurisdiction as to the order dismissing Dantec and will therefore not consider Dantec's request that we affirm that order. This appeal is limited to the trial court's September 16, 2022 order granting in part and denying in part defendant's motion for summary disposition.

## IV. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 109; 1 NW3d 44 (2023). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The reviewing court considers pleadings, affidavits, depositions, and other documentary evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of materials fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). The motion must then be denied and the issues left to a factfinder to resolve at a trial. *Dextrom v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010).

## V. PREMISES-LIABILITY CLAIM

In her cross-appeal, plaintiff argues that defendant was in possession and control of the ticket counter and therefore the trial court erred by dismissing her premises-liability claim. We disagree.

All negligence claims, including premises-liability claims, require a plaintiff to prove four essential elements: duty, breach, causation, and harm. *Kandil-Elsayed*, 512 Mich at 110. Duty "is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id*. In the premises-liability context, the defendant's duty arises from its role "as an owner, possessor, or occupier of land." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 626; 971 NW2d 716 (2021). Thus, premises liability "is conditioned upon the presence of both possession and control over the land because the person having such possession and control is normally best able to prevent harm to others." *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 705; 644 NW2d 779 (2002) (cleaned up).

"Who had possession and control of a piece of property at a given time presents a question for the jury to decide unless there is no dispute of material fact." *Gabrielson v Woods Condo Assoc, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364809); slip op at 9. "Possession," for purposes of premises liability, is defined as "the right under which one may exercise control over something to the exclusion of all others," and "control" is defined as "exercising restraint or direction over; dominate, regulate, or command," and "the power to manage, direct, oversee." *Derbabian*, 249 Mich App at 703 (cleaned up). Title ownership alone is not dispositive. *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980). A premises

possessor can loan the right of possession to another party, "thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Id*. at 552-553. Further, the right to possession and control is not necessarily exclusive, and two entities may share coextensive obligations to parties that enter the premises if possession and control are shared between them. *Gabrielson*, ___ Mich App at ___; slip op at 9-10.

In the landlord/tenant context, the landlord grants the tenant the exclusive right of possession to the designated portions of the property, "but the landlord retains exclusive possession of the common areas." *Stanley v Town Square Co-op*, 203 Mich App 143, 147; 512 NW2d 51 (1993). The tenant has a license to the common areas of the property and therefore is an invitee of the landlord while in the common areas. *Id*.

The material facts regarding defendant's possession and control over the ticket counter at issue are not in dispute. The lease agreement between defendant and the WCAA granted defendant a right to use the Common Use Facilities, which included the ticket counter. But that right of use was not "to the exclusion of all others," as required for possession. *Derbabian*, 249 Mich App at 703 (cleaned up). Rather, as expressly stated in the lease agreement, defendant's right of use was "in common with all other air carriers operating . . . in the North Terminal." Plaintiff points to the fact that defendant has utilized a specific section of the North Terminal since 2014 and claims that defendant exercises full possession and control of its "leased space" during its hours of operation. But the "leased space" that plaintiff refers to is the "common use ticket counter," and defendant undisputedly shares that space with the other air carriers in the terminal. Defendant's history of use of that space is consistent with the terms of the lease agreement which, as discussed, make clear that defendant lacked the possession and control necessary to sustain plaintiff's premises-liability claim. Plaintiff also points to a provision of the lease agreement which states that defendant "shall provide for and supply . . . all janitorial services and perform all other maintenance and repair to the Leased Premises." That provision, however, pertains to defendant's obligations as to the "Leased Premises," which is an area in the airport wholly separate and distinct from the "Common Use Facilities" such as the ticket counter at issue.

Plaintiff relies on *Siegel v Detroit City Ice & Fuel Co*, 324 Mich 205; 36 NW2d 719 (1949), but we find that case inapposite. In *Siegel*, our Supreme Court found that the defendant ice company and the defendant theater were both in possession and control of the parking lot that the ice company leased to the theater because the ice company reserved buildings on the property and retained a joint right of ingress and egress with the theater, rather than granting the theater full possession. *Siegel*, however, did not involve a common area shared by multiple tenants, and as discussed, the terms of the lease agreement in this case make clear that tenants such as defendant were not granted possession and control over the "Common Use Facilities." Plaintiff also argues that the lease agreement does not specifically state that the lessor, the WCAA, is solely responsible for the maintenance of the ticket counter or that the ticket counter is solely under the WCAA's control. While such express provisions would perhaps be enough in themselves to show that the WCAA rather than defendant had possession and control over the ticket counter, plaintiff points to no authority which states that they are necessary to that conclusion, and we fail to see how their absence might create a genuine factual dispute on that point given the other terms of the lease agreement.

Plaintiff has failed to establish that defendant had possession and control of the premises at issue, or that there is a genuine issue of material fact in that regard. Accordingly, we agree with the trial court that defendant is entitled to summary disposition on plaintiff's premises-liability claim.

## VI. GENERAL-NEGLIGENCE CLAIM

Defendant argues that plaintiff's general-negligence claim should be dismissed because it sounds exclusively in premises liability. Alternatively, defendant argues that plaintiff failed to set forth sufficient evidence to support her claim. We agree with the trial court that defendant has not shown that it is entitled to summary disposition on this claim.

According to defendant, plaintiff's general-negligence claim is, in fact, exclusively a premises-liability claim because it alleges an injury based on a condition of the land, and so the claim must correspondingly fail because defendant was not the premises possessor. As discussed, we agree that plaintiff's premises-liability claim is precluded because defendant lacked the requisite possession and control over the ticket counter and therefore owed no duty to plaintiff as a premises possessor. But that a defendant does not owe the duty of a premises possessor to the plaintiff does not mean that the defendant owes no duty of any sort to the plaintiff, or cannot be held liable in tort for its conduct on the premises at issue.[2] *Finazzo v Fire Equipment Co*, 323 Mich App 620; 918 NW2d 200 (2018), is analytically illustrative. There, the plaintiff sued the defendants, who were installing a fire protection system at his workplace, for injuries he suffered when he tripped over a cable that was on the floor where the defendants were working. The plaintiff raised both premises-liability and ordinary-negligence theories of liability with respect to these circumstances and injuries. This Court, in affirming the grant of summary disposition to the defendants, first addressed the premises-liability theory, concluding that the defendants did not owe a duty to the plaintiff under that theory because the defendants did not possess the premises and, if they did, the cable was open and obvious.[3] *Id.* at 625-634. This Court then separately analyzed the plaintiff's ordinary-negligence theory of liability, explaining that the defendants had a common-law duty to act with ordinary care so as not to create an unreasonable risk of harm but that, given the evidence regarding the worksite and the defendants' conduct, there was no genuine factual dispute that the defendants did not breach that duty. *Id.* at 634-637.

---

[2] Indeed, even if defendant were the premises possessor, that fact alone would not absolve it of all other duties and liability for injuries that occur on its premises. As this Court has explained, "In a premises liability claim, liability emanates merely from the defendant's duty as an owner, possessor, or occupier of land. However, that does not preclude a separate claim [against that defendant] grounded on an independent theory of liability based on the defendant's conduct . . . ." *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005).

[3] At the time *Finazzo* was decided, whether the alleged hazard was open and obvious pertained to the duty element of a plaintiff's premises-liability claim; as our Supreme Court recently made clear in *Kandil-Elsayed*, 512 Mich at 104, that is no longer so.

As in *Finazzo*, plaintiff here sued defendant under two theories of liability: premises liability and general negligence. The former claim is based on the duty defendant allegedly owed to plaintiff as premises possessor, and it fails because defendant lacked that status and thus did not owe that duty. Plaintiff cannot avoid that conclusion and impose the duty of a premises possessor on defendant simply by calling her claim a general-negligence one. But plaintiff can—and did—bring a general-negligence claim premised on the distinct, common-law duty that defendant owed to act with due care and not unreasonably endanger others. See *id.*; *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992) (recognizing "the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others") (quotation marks and citation omitted). And while plaintiff's general-negligence claim overlaps with her premises-liability one and is correspondingly precluded to some extent,[4] it also sets forth allegations that defendant breached its common-law duty through several actions or inactions involving how it chose to organize and run its workplace and how it trained and directed its workers. Those allegations of negligent conduct on the premises at issue do not depend, for their duty, on defendant's status as possessor of the premises, and they are not foreclosed as a matter of law simply because defendant lacked that status.[5]

---

[4] As just one example, plaintiff's general-negligence claim includes allegations that defendant failed to construct the ticket counter safely. Those allegations seemingly depend on defendant's alleged status as premises possessor and the authority and duty that would flow from it, and thus they would not survive the absence of that status. Given the limited scope of argument that defendant raised in its motion for summary disposition and the correspondingly limited record that has been developed and properly presented on appeal, we decline to opine further on the precise scope of defendant's duty under a general-negligence theory in this case and which of plaintiff's allegations would or would not fall within it. To ultimately obtain relief, of course, plaintiff will have to prove that duty and any breaches thereof. See generally *Kandil-Elsayed*, 512 Mich at 110. And to the extent that the trial court's brief explanation of its ruling on this claim could be read as at all at odds with our instant ruling and rationale, we nonetheless affirm the court for reaching the right result in denying summary disposition. See, e.g., *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

[5] Citing premises-liability cases, defendant argues that plaintiff's general-negligence claim fails because it is not based on an "overt act." See, e.g., *Kachudas v Invaders Self Auto Wash, Inc*, 486 Mich 913; 781 NW2d 806 (2010); *Nathan v David Leader Mgt, Inc*, 342 Mich App 507; 995 NW2d 567 (2022); *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1; 930 NW2d 393 (2018). But as those cases reflect, this "overt act" line of inquiry is used to determine when a general-negligence claim can be brought against *a premises possessor* for injuries arising on its premises. See, e.g., *Nathan*, 342 Mich App at 512 (explaining that "an ordinary-negligence claim may be brought for the overt acts of a premises owner on his or her premises") (cleaned up). Correspondingly, the cited cases all involve defendants that were premises possessors, and at issue was which of the defendant's duties and accompanying legal standards—the one it owed as premises possessor for the condition of its land, or the one generally owed for its use of due care—

Alternatively, defendant argues that it was entitled to summary disposition on plaintiff's negligence claim because plaintiff failed to set forth sufficient evidence to support her claim. Plaintiff responds that defendant failed to raise this argument in its motion for summary disposition and therefore waived it. We agree. As this Court has explained,

> In civil cases, Michigan follows the "raise or waive" rule of appellate review. Under that rule, litigants must preserve an issue for appellate review. To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court. Moreover, the moving party must show that the same basis for the error claimed on appeal was brought to the trial court's attention. If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue. However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. [*Tolas Oil & Gas Exploration Co v Bach Srvs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-3 (cleaned up).]

In its motion for summary disposition, defendant argued only that plaintiff's general-negligence claim should be dismissed because it sounded exclusively in premises liability. It did not raise the alternative argument that the claim should be dismissed because there was insufficient evidence to support it, and plaintiff correspondingly did not brief that issue in response to defendant's motion. Defendant thus failed to preserve the issue for review, and we do not see in these circumstances reason to overlook that failure.[6]

We affirm.

/s/ Anica Letica
/s/ Philip P. Mariani

---

was implicated by the plaintiff's allegations. The same holds true for certain cases cited in the partial dissent. See, e.g., *Wilson v BRK, Inc*, 328 Mich App 505; 938 NW2d 761 (2019); *Jahnke v Allen*, 308 Mich App 472; 865 NW2d 49 (2014); *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685; 822 NW2d 254 (2012). This line of caselaw does not purport to address or define the duties and liability of a defendant that is not the possessor of the premises at issue. Furthermore, as discussed, plaintiff's general-negligence claim comprises allegations of negligent conduct by defendant; we disagree with the partial dissent's contrary view on that point. We also note (as does the partial dissent) that a general-negligence claim may still be sustained in the absence of such conduct under certain circumstances. Whether any such circumstances may be present in this case, however, is among the arguments and issues that are not properly before us on appeal but that the parties remain free to pursue going forward in the trial court.

[6] This is not to suggest anything about the potential merit of the arguments defendant has now raised on this issue, but only reflects our determination that we do not view them as properly before us or otherwise fit for disposition for the first time on appeal.