GOLDSMITH *v.* CODY.

1. NEGLIGENCE—PARKING LOTS—INVITEES.

The lessee of parking space in a parking lot open to the public and the lessee's prospective passengers are invitees so far as the lessor's duty to use reasonable care in maintaining a reasonably safe place for such purpose is concerned.

2. SAME—PARKING LOT—INVITEES—OPEN STAIRWAY.

The question of whether the invitation to plaintiff, extended to him by the lessee of space in a parking lot open to the public and whether plaintiff's use of rear areaway containing an open stairway around which a barricade had been removed, were within the reasonable contemplation of the parties was a question for the jury in action for injuries sustained from fall into the stairway at night.

3. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

The Supreme Court views the facts from a light most favorable to plaintiff on appeal from directed verdict for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur, Garages, Parking Stations, and Liveries §§ 29, 44, 46. Liability of owner or operator of parking lot or station for personal injuries. 14 ALR2d 780.
[2] 24 Am Jur, Garages, Parking Stations, and Liveries § 61.
[3] 3 Am Jur, Appeal and Error § 945.

4. NEGLIGENCE—OPEN STAIRWAY—BARRICADE—EVIDENCE OF REMOVAL.
   Evidence failed to disclose parking lot lessee was negligent in failing to maintain barricade around open stairway in that it was not shown when the barricade which had existed was removed before plaintiff fell into it about 9 p.m. on a dark winter night, since there was a failure to show defendant was negligent.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted June 12, 1957. (Docket No. 7, Calendar No. 47,167.) Decided March 5, 1958.

Case by Norman Goldsmith against Mary Cody and Collins Post No. 147, Veterans of Foreign Wars, an unincorporated voluntary association, for injuries sustained in fall on unguarded steps. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*I. Goodman Cohen* (*Irving L. Halpern,* of counsel), for plaintiff.

*Moll, Desenberg, Purdy & Glover* (*Richard A. Kitch,* of counsel), for defendant Cody.

EDWARDS, J. Norman Goldsmith, plaintiff and appellant herein, was a clerk at the House of Jackets on Woodward avenue in Highland Park. On February 28, 1953, before quitting time he discovered that his car would not start. He got in touch with an acquaintance in the same block, one Ben Browarny and made arrangements to ride home with him. Goldsmith was to meet Browarny at the latter's car which was parked on a parking lot to the rear of the House of Jackets building and immediately adjacent to the west side of a building leased to defendant Collins Post of the V.F.W. and owned by defendant Mary Cody.

Browarny leased a space on this lot for his car from defendant Collins Post for $3.50 per month and his name was painted on the wall of the building to designate his tenancy.

Goldsmith worked until 9 p.m. on the date in question and then walked south 2 doors along Woodward to the used-car lot and then through said lot to the areaway at the rear of the Collins Post.

As he was proceeding toward the parking lot, in the dark, he fell into a stairway located at the rear of the Collins Post building (as shown on the following sketch) and suffered a broken rib and a broken leg for which injuries damages are sought in this suit.

It appears that the stairway in question had had a wooden barricade built around it and that this barricade had been removed or knocked down prior to the accident, at a time and in a manner not revealed on this record.

Lloyd Weaver, the post commander, called as a witness by plaintiff, testified:

"I know the stairwell was barricaded in January, 1953, by 2 four-by-fours on each corner with 2 one-by-six railings around it, the entire stairwell.

"I have personal knowledge that these barricades were put up or reinstalled after February twice. Once right after the accident and once was just not too recently. The barricade was put up again right after this accident with the same type of wood, the two-by-fours. I don't know how long it lasted but I know there was another one put up just recently."

There are no essential factual disputes in this record (although several may be found in the pleadings), doubtless because at the close of plaintiff's proofs the trial judge directed a verdict for defendants.

His opinion indicates that the directed verdict was based, in part, upon his view that plaintiff, on these facts, was a trespasser to whom defendants owed no duty of reasonable care.

We believe the circuit judge was in error on his conclusion that plaintiff was a trespasser as a matter of law. On the facts stated, where defendants directly or by lease operate a parking lot available to the public, the parking lessee is plainly an invitee as to the parking lot and its approaches.

So, too, in our view, are those whom said parking lessee invites to accompany him in his automobile, provided the invitation and the use under it were such as to be within the normal contemplation of the parties.

Under the testimony, we believe that the question of whether Browarny's invitation to plaintiff and plaintiff's use of the rear areaway were within the reasonable contemplation of the parties to the oral lease was for the jury. *Schmidt* v. *Michigan Coal & Mining Co.,* 159 Mich 308. If the jury's answer was in the affirmative, plaintiff was an invitee and the defendant or defendants found to be in control and operation of the premises in question owed him the duty of reasonable care. *Blakeley* v. *White Star Line,* 154 Mich 635 (19 LRA NS 772, 129 Am St Rep 496) ; *Torma* v. *Montgomery Ward & Company,* 336 Mich 468; Prosser on Torts (2d ed), p 452.

We have reviewed *Hargreaves* v. *Deacon,* 25 Mich 1, and the subsequent decisions upon which the trial court relied. In each, the Court founded its ruling upon the proposition that the injured party was a trespasser as a matter of law. In our view of the fact situation here, we have a different question and one not governed by the cases relied upon.

Closer to our present facts are the parking lot cases where the party injured was accompanying the parking lessee, and is generally held to be an invitee. *Meyer* v. *Manzer,* 179 Misc 355 (39 NYS2d 5) ; *Smigielski* v. *Nowak,* 124 NJL 235 (11 A2d 251) ; *Gray* v. *Watson,* 54 Ga App 885 (189 SE 616). See, also, 14 ALR2d 780, 789.

We believe that plaintiff presented ample evidence from which the jury could have concluded that plaintiff at the time and place in question was an invitee,[*] and, hence, was owed the duty of reasonable care.

The circuit judge, however, also based his instructed verdict on a finding that plaintiff had not presented facts from which defendants could be found guilty of negligence. On appeal from such a directed

---

[*] See American Law Institute, 2 Restatement, Torts, §§ 330–332, on this problem. Also, Prosser's critique in 26 Minn L Rev 573, with which we are more in accord. Also, 2 Harper and James, The Law of Torts, § 27.12.

verdict, we view the facts from a light most favorable to plaintiff. *Pomeroy* v. *Dykema,* 256 Mich 100; *Gapske* v. *Hatch,* 347 Mich 648; *Daigneau* v. *Young,* 349 Mich 632.

The key portion of plaintiff's testimony is brief:

"I used to park my car at the rear of the House of Jackets. After I parked my car I would walk through the used-car lot. I noticed this stairway and noticed there were some boards around there at certain times.

"As I was walking to Mr. Browarny's car I turned west on the used-car lot. I was walking along the building. It was dark. I couldn't see anything, and I was trying to put my arm, with my arm I was trying to find that partition or something or boards that I used to see around that hole. I was intending to walk around it to the back. As I was walking I fell right in there. As I fell I did not knock over or knock down any boards. There were no boards or barricades standing up covering this hole.

"There was no light whatsoever in the empty light socket right above. I did not see ahead of me any distance at all. I could see maybe a foot or two ahead of me."

The record also contains, as exhibits, photographs of the area in question, identified by plaintiff's witness, Browarny, as representative of the scene in 1953. In them we see 3 substantial posts and 2 one-by-six's forming a guardrail around the stairwell in question. The V.F.W. post commander testified that the same materials were used to reconstruct the guardrail as had been previously employed.

It appears clear that a favorable view of plaintiff's testimony requires us to assume that he had seen these "boards" or "partition" at certain times, and that he deemed the railing suitable and safe for the purpose of guiding himself around the stairwell. It is a fair inference, likewise, from plaintiff's testi-

mony that at the time of his injury there were no
guardrails in place, but that they had been knocked
down or removed in a manner and at a time wholly
undisclosed by the record.

Neither pleadings nor proofs offer any contention
that the guardrails were negligently installed or
maintained, or that any dangerous condition existed
prior to their removal or destruction.

The crucial question remaining in the case is
whether there was notice to the defendants of the
existence of a dangerous condition upon the removal
or destruction of the guardrails. Such notice is
essential to proof of negligence. It can be either
actual or constructive.

The leading case on the point in question is an
English case decided in 1866, *Indermaur* v. *Dames,*
LR 1 CP 274, 287 (35 [NS] LJ CP 184, 190, 14 LT
484); affirmed, LR 2 CP 311 (36 [NS] LJ CP 181),
which is cited and followed in most States. There the
court allowed recovery where a repairman fell
through an unguarded chute in a sugar refinery and
the testimony showed that the owners knew of
the dangerous condition and the repairman did not.
The rule stated is as follows:

"With respect to such a visitor at least, we con-
sider it settled law that he, using reasonable care on
his part for his own safety, is entitled to expect that
the occupier shall on his part use reasonable care to
prevent damage from unusual danger which he
knows or ought to know; and that, when there is
evidence of neglect, the question whether such rea-
sonable care has been taken by notice, lighting,
guarding, or otherwise, and whether there was such
contributory negligence in the sufferer, must be de-
termined by a jury as a matter of fact."

Michigan cases have followed the same general
rules pertaining to notice: *Blakeley* v. *White Star
Line, supra; Carpenter* v. *Herpolsheimer's Co.,* 278

Mich 697; *Torma* v. *Montgomery Ward & Company*, *supra*.

Prosser's Hornbook gives a more detailed version of the duty of the occupier of land:

"The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. He must not only warn the visitor of dangers of which he knows, but must also inspect the premises to discover possible defects. There is no liability, however, for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care. The mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." Prosser on Torts (2d ed), p 459.

See, also, *Lone Star Gas Co.* v. *Ballard* (Tex Civ App), 138 SW2d 633; *Gold* v. *Arizona Realty & Mortgage Co. of Arizona*, 12 Cal App2d 676 (55 P2d 1254); *Parks* v. *Montgomery Ward & Co.* (CCA), 198 F2d 772.

There is no evidence in the instant case from which the jury could have found actual notice to defendants of the destruction of the barrier.

Where the defect was of such a nature as to warrant the conclusion that it had existed an appreciable time, we have held the question of constructive notice to be one for the jury. Thus, a hole apparently worn in a passageway to a public parking lot was held to be constructive notice to the owner. *Siegel* v. *Detroit City Ice & Fuel Co.*, 324 Mich 205; as was a hole in a runner at a restaurant door, *Yarington* v. *Huck*, 218 Mich 100.

If there had not been guardrails of such construction that plaintiff felt justified in relying upon same

to guide him around this stairwell, we would feel these cases applicable.

The missing link in plaintiff's case is any proof as to when the barricade was demolished or removed.

The trial judge in his opinion said as follows:

"There is no proof here as to when these barriers or barricades were removed, whether it happened some time preceding this accident or a few moments before. Suffice it to say that the plaintiff says he never saw them down, but no proof is present in this record to show that the defendants or any of them were given warning of a situation where it was necessary for them to take action in order to protect themselves from the charge of negligence.

"The burden of proof is upon the plaintiff in that respect, and the record is void of testimony."

On this second point, the record which we have reviewed does not justify the reversal sought by appellant.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.