# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN THOMPSON,

Plaintiff-Appellant,

v

ANN GIBSON,

Defendant-Appellee.

UNPUBLISHED
July 24, 2018

No. 333755
Livingston Circuit Court
LC No. 15-028662-NO

## ON REMAND

Before: CAVANAGH, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

This case returns to us on remand from our Supreme Court. *Thompson v Gibson*, 911 NW2d 804 (2018). In our earlier opinion, we determined that there was a genuine issue of material fact with regard to whether defendant, Ann Gibson, had notice of the alleged dangerous condition on the premises, so we reversed the trial court order granting Gibson summary disposition under MCR 2.116(C)(10).[1] However, our Supreme Court vacated that portion of our opinion and remanded with orders for us to address its decision in *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1; 890 NW2d 344 (2016) (2016). For the reasons set forth in this opinion, we reverse the trial court order granting summary disposition on the premises liability claim and remand for further proceedings.

## I. BASIC FACTS

The factual background was set forth in our earlier opinion:

[Plaintiff, Steven] Thompson[,] was injured while sweeping the back deck of a house in Howell, Michigan, that he was renting from Gibson. The accident occurred on July 8, 2014. Thompson explained:

---

[1] In our earlier opinion, we affirmed the trial court's decision to grant Gibson summary disposition of plaintiff, Steven Thompson's, nuisance claim. The Supreme Court did not vacate that part of our opinion, so we will not address that claim further.

-1-

> [W]hen I got to the railing that surrounds the deck I pushed as much of the swept up debris underneath the railing. I put my left hand on the top part of the railing, leaned over to brush off the edge of the debris I had swept under, and the rail just very freely gave. To prevent myself from falling while balancing—I was a hairline from going over. I was—I thought I was going for sure. And I had a broom out in my right hand and I'm about to take this six foot section of rail over. So I start to try and correct myself back into the original position, struggling. And by the time I did get it back into the original position I heard something kind of pop or rip in my arm and immediate pain.

After the accident, Thompson went to the hospital and was diagnosed with a detached triceps tendon and had to undergo surgery.

Thompson explained that the only entry into the house's fenced backyard was via the deck. Both Thompson and his wife testified that they would use the deck for ingress and egress to the backyard. Further, Thompson's wife stated that when she used the deck to walk into the backyard she could not see the railing in her peripheral vision. She also explained that although there was a table on the deck, she only sat by it about three or four times, and it was not in the "isolated" corner where the accident occurred. She asserted that nobody spent time "back there." For his part, Thompson testified that he sat on the deck, but that he would not say he did so a lot. Thompson and his wife denied knowing about the defect before the accident or providing notice to Gibson that the railing was defective. Thomson also explained that before the accident he never thought the railing was dangerous because he thought it was securely affixed.

Thompson filed suit against Gibson on August 4, 2015, alleging one count of negligence and one count of nuisance. He asserted that Gibson was negligent by failing to maintain the premises in a reasonably safe condition, by failing to adequately inspect the premises for hazards, by violating MCL 125.401 by failing to keep the premises and all its parts in good repair, and by failing to warn him about the improperly secured railing. . . .

On March 8, 2016, Gibson filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10). She argued that she was entitled to summary disposition on the negligence claim because she lacked knowledge of any existing defects and because the danger was open and obvious. . . . The trial court agreed and granted summary disposition in her favor. [*Thompson v Gibson*, unpublished per curiam opinion of the Court of Appeals, issued August 8, 2017 (Docket No. 333755), pp 1-2.]

In our earlier opinion, we held that there was a question of fact with regard to whether Gibson had constructive notice of the defective railing. *Id*. at 6. Gibson applied for leave to appeal to our Supreme Court, which, in lieu of granting leave to appeal, vacated the portion of our opinion addressing Thompson's premises liability claim and remanded to this Court with

instructions to address *Lowrey*. *Thompson*, 911 NW2d at 804. We granted the parties' joint motion to file supplemental briefs. *Thompson v Gibson*, unpublished order of the Court of Appeals, entered June 21, 2018 (Docket No. 333755), and we now consider the issue in light of our Supreme Court's directive to address *Lowrey*.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is a genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey*, 500 Mich at 5. When evaluating a motion for summary disposition, the reviewing court must take care not to alter the burden of proof that the moving party must meet to obtain summary disposition under MCR 2.116(C)(10); a party moving for summary disposition "may satisfy its burden under MCR 2.116(C)(10) by submitting affirmative evidence that negates an essential element of the non-moving party's claim, *or* by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. at 7 (quotation marks, citation, and alternations omitted).

Under the first option, the moving party need only establish that the nonmoving party's evidence is insufficient to prove his or her prima facie case, i.e. all the essential elements of his or her claim. *Id*. at 9. Bare assertions that a party will not be able to meet its burden of proof at trial are insufficient to satisfy this burden. Instead, the moving party must support its (C)(10) motion with "[a]ffidavits, depositions, admissions, or other documentary evidence . . . ." MCR 2.116(G)(3)(b).[2] Further, "[a] motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). "The level of specificity required under MCR 2.116(G)(4) is that which would place the non-moving party on notice of the need to respond to the motion made under MCR 2.116(C)(10)." *Barnard Mfg*, 285 Mich App at 369.

In this case, Gibson moved for summary disposition under MCR 2.116(C)(10). Relevant to the issue currently before this Court, Gibson argued in her supporting brief that she did not have notice of the allegedly hazardous condition, and she supported her claim with affidavits, depositions, and other documentary evidence. Gibson's motion specifically identified the issue to which she believed there was no genuine issue of material fact, and she properly supported her motion with documentary evidence as required by MCR 2.116. Moreover, rather than

---

[2] The court rules mandate that any "[a]ffidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6).

attempting to affirmatively negate an essential element of Thompson's claim, she opted to demonstrate to the court that Thompson's evidence was insufficient to establish the notice element of his premises liability claim. See *Lowrey*, 500 Mich at 7. Accordingly, we conclude that Gibson satisfied her obligation under MCR 2.116(G)(4) to identify the issues with specificity, and that she properly supported her motion with documentary evidence as required by MCR 2.116(G)(3). See also *Barnard Mfg*, 285 Mich App at 371.

Because Gibson made a properly supported motion for summary disposition under MCR 2.116(C)(10), the burden shifted to Thompson to establish that a genuine issue of disputed fact exists with respect to his premises liability claim. MCR 2.116(G)(4) ("When a motion under subrule (C)(10) is made and supported as provided in [MCR 2.116], an adverse party may not rest upon mere allegations or denials of his or her pleading, but must, by affidavit or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial."). The record reflects that, in opposition to Gibson's motion for summary disposition, Thompson submitted his own documentary evidence. Thus, Thompson satisfied his obligation to come forward with evidence. The question that remains is whether the evidence before the trial court, viewed in the light most favorable to Thompson, demonstrates that there is a genuine issue of material fact with regard to whether Gibson had notice of the dangerous condition on the premises.

## B. ANALYSIS

A landowner's duty with respect to the conditions of the premises depends on the status of the person entering the land, i.e., whether the individual is an invitee, licensee, or trespasser. *James v Alberts*, 464 Mich 12, 19; 626 NW2d 158 (2001). It is undisputed that Thompson was an invitee, which means that he was entitled to the highest level of protection under the law. *Id*. at 19-20. In order to successfully advance a premises liability claim, "an invitee must show that the premises owner breached its duty to the invitee and that the breach constituted the proximate cause of the damages suffered by the invitee." *Lowrey*, 500 Mich at 8.[3] "A premises owner breaches its duty of care when it 'knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.' " *Id*., quoting *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). The plaintiff must "establish that [the] defendant, as a premises owner, possessed actual or constructive notice of the dangerous condition." *Lowrey*, 500 Mich at 10. Our Supreme Court has long described liability based on a premises owner's notice of a dangerous condition as follows:

---

[3] A landowner's duties to an invitee also includes an "obligation to . . . make the premises safe, which requires the landowner to inspect the premises and depending, upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Sitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). To the extent that Gibson contends she did not have a duty to inspect a safety feature of her property before leasing it to Thompson, we reject her argument.

The proprietor is liable for injury resulting from an unsafe condition caused by the active negligence of himself and his employees; and he is liable when the unsafe condition, otherwise caused, is known to the shopkeeper or is of such a character or has existed a sufficient length of time that he should have knowledge of it. [*Id.* at 10, quoting *Carpenter v Herpolsheimer's Co*, 278 Mich 697, 698; 271 NW 575 (1937).]

In *Lowrey*, the plaintiff was injured at the defendant's business after she slipped on something "wet" on a stairway and fell down several steps. *Lowrey*, 500 Mich at 3-4. She could not establish that the defendant had actual notice of the water on the stairs because the documentary evidence demonstrated that she did not see any water on the stairs, no one had reported water on the stairs or any accidents on the stairs the night of the accident, and the plaintiff and her friends did not hear any other customers expressing concerns about water on the stairs. *Id.* at 11. Further, the plaintiff also failed to present evidence of constructive notice. *Id.* at 11-12. Our Supreme Court explained:

Plaintiff and her friends traversed the stairs several times during the evening without incident, evidence which would tend to support the conclusion that the hazardous condition that caused plaintiff's fall had not been present on the steps for the entirety of the evening. Nor did plaintiff present any evidence as to when the condition arose. *Goldsmith v Cody*, 351 Mich 380, 389; 88 NW2d 268 (1958) (granting summary disposition in favor of the defendant because "[t]he missing link in [the] plaintiff's case [was] any proof as to when the [hazardous condition arose]"). Finally, plaintiff presented no evidence that the hazardous condition in this case was of such a character that the defendant should have had notice of it. In fact, no evidence concerning the character of the condition was presented; plaintiff's assumption that the stairs must have been wet because her pants were wet after her fall does not support any particular conclusion concerning the character of the condition. [*Id.* at 12.]

Because the plaintiff in *Lowrey* could not establish a factual question concerning the notice element of her claim, the defendant in that case was entitled to summary disposition under MCR 2.116(C)(10), notwithstanding the fact that the defendant did not present evidence establishing that it had conducted a reasonable inspection of the stairs. *Id.* at 12-13.

Thompson did not present any evidence that Gibson had actual notice of the defective railing. He did, however, present sufficient evidence to create a question of fact on whether Gibson had constructive notice of the defective railing. Unlike *Lowrey*, there is evidence about the character of the defect. Specifically, Thompson testified that the defect consisted of an unanchored or loosely anchored safety railing on a back deck that "gave freely" and almost instantly the second he leaned against it. Photographs of the defective railing were also submitted.[4] Two photographs show a slanted gap between where the railing and the post meet,

---

[4] The photographs were taken after the accident; however, there is no indication in the record that they are not representative of the condition of the railing at the time Thompson was injured.

and another two photographs show the railing pushed completely off the post, leaving what appears to be a large scrape in the paint on the post. The photographs also show general wear and tear on the back deck, which allows for a reasonable inference that the deck's condition was gradually deteriorating. They also reveal that the railing and the post do not line up perfectly. In addition, Thompson submitted an affidavit wherein he stated that there were no visible nails in the railing, although there was an empty hole that appeared to have once had a nail in it.

The evidence further allows for a reasonable inference that the defect "existed a sufficient length of time that [Gibson] should have knowledge of it." See *Lowrey*, at 10 (quotation marks and citation omitted). Gibson stated in her affidavit that she lived in the house from 2005 until 2012. She explained that the deck where Thompson was injured was the same deck that existed when the house was purchased. While she lived there, she had to replace a decorative spindle in another area of the deck, and she also replaced a warped board that was "remote" from the area where Thompson was injured. She did not perform any repairs to the railing, nor is there evidence that, before the accident, the railing was ever closely inspected[5] for defects despite the fact that other parts of the deck needed to be repaired and replaced. Moreover, as noted above, the photographs and Thompson's affidavit allowed for a reasonable inference that the deck deteriorated over time. Thus, unlike the plaintiff in *Lowrey*, Thompson presented evidence that the defective condition arose over an extended period of time before his accident.

In her supplemental brief, Gibson argues that Thompson failed to meet his burden because he failed "to provide evidence that would prove when the alleged dangerous condition came into existence, how long the condition had existed, or any characteristics of the condition which could have or should have put defendant on notice." However, *Lowrey* does not require a plaintiff's proofs to have such specificity. Instead, it was the *Lowrey* plaintiff's failure to present *any* evidence regarding when the dangerous condition arose that was significant. See *Lowrey*, 500 Mich at 12.

The *Lowrey* Court relied upon *Goldsmith v Cody*, 351 Mich 380, 389; 88 NW2d 268 (1958) to support the proposition that a plaintiff must produce some evidence of when the dangerous condition arose. Examination of that case indicates that a plaintiff need not present evidence demonstrating the precise moment the dangerous condition came into existence nor the exact duration of its existence. In *Goldsmith*, the defective condition was the absence of a railing around a stairwell, and the record showed that periodically wooden railings were placed around the stairwell and periodically they were removed. *Id*. at 384. The plaintiff fell at a time when the railings were gone, but he had no evidence whether the railings had been moved "some time" before the accident "or a few moments before." *Id*. at 389. In contrast, in this case it is reasonable to infer that the condition is one that developed over time, but it is not reasonable to infer that the condition only arose a few moments before the accident.

_____

Moreover, Thompson's own recollection of the moment he was injured allows for an inference that the railing was not properly anchored.

[5] There was evidence that before renting the house, Thompson walked through it.

In *Goldsmith*, the Court explained that "[w]here the defect was of such a nature as to warrant the conclusion that it had existed an appreciable time, we have held that the question of constructive notice [is] one for the jury. Thus, a hole apparently worn in a passageway to a public parking lot was held to be constructive notice to the owner, as was a hole in a runner at a restaurant door." *Id*. at 388 (citation omitted). The dangerous condition in this case is more akin to a hole worn in a passageway or a hole in a runner at a restaurant than it is to a railing that was sometimes up and sometimes down. Thus, we conclude that, in accord with *Goldsmith*, it should be left for a jury to weigh the evidence and determine whether the dangerous condition existed for such a length of time or was of such a character that defendant should have known about it. See *id*.

Moreover, there is no evidence that anything occurred to hasten the deterioration of the railing, i.e., it was not caused by a third party or by particularly destructive weather. See *Siegel v Detroit City Ice & Fuel Co*, 324 Mich 205, 212; 36 NW2d 719 (1949). In *Siegel*, our Supreme Court stated that given the size of the hole, "a jury might well believe that it had existed for some considerable time. There was no showing of a sudden cave-in, any disturbances of the ground or subsidence from an unusual cause. The jury could well conclude that the hole must have existed for some time." *Id*. at 212. Here, given Thompson's testimony and the photographs of the railing, a jury "might well believe" that the dangerous condition existed for a considerable time, and, like the defect in *Siegel*, there is no showing that the situation developed suddenly from an unusual cause.

In sum, viewing the evidence in the light most favorable to Thompson, there is a genuine question of material fact with regard to whether Gibson had constructive notice of the defective railing. Because there is a genuine issue of fact with regard to notice, Gibson cannot establish that Thompson's evidence is insufficient to establish an essential element of his claim. See *Lowrey*, 500 Mich at 7. As a result, she is not entitled to summary disposition on this basis.[6]

Reversed and remanded for further proceedings. We do not retain jurisdiction. Thompson, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Michael J. Kelly

---

[6] On remand, Gibson may move again for summary disposition, this time presenting evidence that affirmatively negates Thompson's evidence. As our Supreme Court made clear in *Lowrey*, a moving party may support his or her motion for summary disposition under MCR 2.116(C)(10) in one of two ways. See *id*. (stating that a party may satisfy its burden under MCR 2.116(C)(10) "by submitting affirmative evidence that negates an essential element of the non-moving party's claim, *or* by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim") (quotation marks, citation, and alternations omitted).