*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

YVONNE BROWN, Personal Representative
of the ESTATE OF JAMES BROWN III,

Plaintiff-Appellant,

v

KING CUSTOM DESIGN, INC., EMAD KHAMO,
WILLIAM J. SAMMUT, SAMMUT PROPERTIES,
LLC, and CIRCLE ENGINEERING, INC.,

Defendants-Appellees.

UNPUBLISHED
June 23, 2025
9:53 AM

No. 368602
Macomb Circuit Court
LC No. 2021-004032-NO

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this wrongful-death action, plaintiff, personal representative of the estate of James Brown III, appeals as of right the trial court's default judgment against defendant Sammut Properties, LLC. On appeal, plaintiff challenges the court's opinion and order granting defendant William J. Sammut's ("Sammut") motion for summary disposition under MCR 2.116(C)(10), the court's order granting, in part, defendants King Custom Design, Inc. and Emad Khamo's motion for summary disposition under MCR 2.116(C)(10), and the court's opinion and order granting Khamo's motion for summary disposition under MCR 2.116(C)(10).[1] We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the death of decedent on January 8, 2021, at a property which was the subject of a commercial purchase agreement between Sammut Properties and Khamo. The aforementioned property was a one-floor industrial complex with an additional mezzanine level,

---

[1] While defendants Circle Engineering, Inc. ("Circle Engineering") and Sammut Properties are parties to the appeal, plaintiff does not challenge the court's order granting Circle Engineering's motion for summary disposition under MCR 2.116(C)(10), nor the aforementioned order of default judgment against Sammut Properties.

accessible via two stairways. The structure was approved pursuant to a barrier-free-design exception in 1980, but the "mezzanine level may be used for storage purposes only; any other use shall render this exception void." A wooden stairway was constructed in "the early 80s" to accommodate access to the mezzanine-level offices, while a gate was instituted at the top of the mezzanine stairway to transport large materials to and from the office space; both the gate and the stairway remained unmodified since their respective institution, and the gate opened to the warehouse floor. While cleaning the mezzanine level of the building, decedent supposedly leaned on the then-unbolted gate and fell to the warehouse floor, resulting in his death.

Before the sale of the building by Sammut Properties to Khamo, the property was occupied by Circle Engineering, an entity founded by Sammut's father, of which Sammut assumed the operations as president in 1998 or 1999, and his brother, John Sammut, served as vice president; Circle Engineering operated a tool and dye business in the subject building until the enterprise was dissolved in March 2020. Sammut's wife and John jointly owned Sammut Properties; John purchased the Sterling Heights building and Sammut Properties from his father in 1991. Sammut was not a shareholder in Sammut Properties, and Sammut did not maintain any financial stake in the entity. Following the dissolution of Circle Engineering, Sammut Properties listed the building for sale. In August 2020, a commercial purchase agreement was drafted listing Sammut Properties as the seller of the Sterling Heights property, and Khamo as the purchaser, with a closing date of December 30, 2020.

Khamo visited the property only once a few months before closing with his real estate agent to determine the installation costs for a fire suppression system; Khamo intended to move the entire operations of King Custom, a cabinet-making entity, to the subject building. As of the closing date, Sammut Properties had yet to properly vacate the premises as residual property remained in the building, including various furniture items on the mezzanine floor. On January 4, 2021, five days after closing, Khamo discovered that Sammut Properties remained noncompliant in vacating the property when Khamo visited the premises to oversee the delivery of certain equipment. Thus, on January 6, 2021, John and Sammut, serving as representatives of Sammut Properties, and Khamo, agreed to an amendment to the initial commercial purchase agreement, which stated:

> The Seller has not vacated the Property as provided in the above described Purchase Agreement. The Seller and Purchaser hereby agree that Sterling Title Agency is authorized to hold $10,000.00 from Seller proceeds in escrow as cleaning deposit. The Seller shall vacate and remove all personal property on or before January 18, 2021. If Seller fails to remove all personal property by January 18, 2021, the Seller shall forfeit ownership of all abandoned personal property and the $10,000 escrow deposit.

Pursuant to the amendment, Sammut entered the building on January 7, 2021, using his own key, accompanied by decedent to sift through the excess property on the premises. Decedent and Sammut were longtime friends. The two returned the following day at approximately 8:00 a.m., in order to continue sorting through the remaining property; Sammut and decedent were the only two persons occupying the premises. Sammut testified that decedent "wanted to go upstairs to see what was left to be done, and decided that we were going to do a little bit before we left since we were up there[,]" and decedent was tossing pamphlets, brochures, and books into the

dumpster from the mezzanine floor. When questioned whether he provided decedent with any instructions regarding the gate, Sammut responded, "No, no reason to . . . . I pretty much thought it was a wall[,]" and Sammut did not inspect the gate. The accident transpired in the afternoon. Sammut did not see decedent's fall, rather, "he heard a noise and found [decedent] laying on the ground bleeding."

## II. PROCEDURAL BACKGROUND

Plaintiff filed a complaint contending that decedent was lawfully on the premises of the subject property when he died due to injuries related to a fall caused by an "improperly constructed door or wall opening and other hazards on the stairwell to the second floor area." Plaintiff advanced negligence and premises-liability claims against all defendants.

Sammut eventually filed a motion for summary disposition under MCR 2.116(C)(10), arguing that (1) plaintiff's allegations concerned a dangerous condition on the land, i.e., an allegedly defective gate, and thus solely sounded in premises liability, (2) Sammut lacked possession and control of the subject property, and (3) Sammut could not be held individually liable for the underlying incident. Following a hearing, the trial court entered an opinion and order granting Sammut's motion for summary disposition, opining that plaintiff's claim sounded in premises liability, and plaintiff failed to demonstrate a question of fact on whether Sammut exercised possession and control of the premises.

Khamo and King Custom jointly filed motions for summary disposition under MCR 2.116(C)(10); the first based on the parties' absence of possession and control of the subject property, and the second grounded in the parties' lack of notice of the dangerous condition. Following a hearing the court entered an order granting in part Khamo and King Custom's motion for summary disposition based on the absence of possession and control as to King Custom. Subsequently, the trial court entered an opinion and order granting Khamo and King Custom's motion for summary disposition based on the absence of notice regarding Khamo, providing "Plaintiff has not presented any evidence that Defendant Khamo knew or should have known of the unbolted gate." Thereafter, the trial court entered an order of default judgment against Sammut Properties in the amount of $3 million. This appeal ensued.

## III. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition pursuant to MCR 2.116(C)(10) is proper when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A motion pursuant to MCR 2.116(C)(10) assesses the factual sufficiency of a claim. *El-Khalil*, 504 Mich at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id*., quoting *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

## IV. PREMISES LIABILITY AND INDIVIDUAL LIABILITY

Plaintiff argues that the trial court erroneously determined that Sammut is entitled to summary disposition on plaintiff's premises-liability and individual-liability claims.

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). "The first element, duty, is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id*. (quotation marks and citation omitted). Within the framework of premises liability, the defendant's duty arises from its role "as an owner, possessor, or occupier of land." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 626; 971 NW2d 716 (2021) (quotation marks and citation omitted). Accordingly, premises liability "is conditioned upon the presence of both possession and control over the land because the person having such possession and control is normally best able to prevent . . . harm to others." *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 705; 644 NW2d 779 (2002) (quotation marks and citations omitted).

The matter of "[w]ho had possession and control of a piece of property at a given time presents a question for the jury to decide unless there is no dispute of material fact." *Gabrielson v Woods Condo Ass'n, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 364809 and 364813); slip op at 9. In the premises-liability context, "possession" is defined as "[t]he right under which one may exercise control over something to the *exclusion of all others*," and "control" is defined as "exercis[ing] restraint or direction over; dominate, regulate, or command," and "the power . . . to manage, direct, oversee." *Derbabian*, 249 Mich App at 703-704 (quotation marks and citations omitted). "[P]ossession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the actual exercise of dominion and control over the property." *Kubczak v Chem Bank & Trust Co*, 456 Mich 653, 661; 575 NW2d 745 (1998).

Plaintiff first contends that there was a factual dispute regarding whether Sammut maintained possession and control over the subject premises, rendering summary disposition improper. The record indicates otherwise. Sammut was the president of Circle Engineering, an entity that previously operated a tool and die business in the subject building, until its dissolution in March 2020. Following the disbandment of Circle Engineering, Sammut Properties sold the building in August 2020, to Khamo. Pursuant to the agreement and subsequent amendment, Sammut entered the subject building on January 8, 2021, to sift through the excess property on the premises. But Sammut was not involved in an individual capacity in the underlying property transaction, he was not a shareholder in Sammut Properties, and he did not maintain any financial interest in the company. Rather, Sammut signed the purchase-agreement amendment due to his wife's recent passing, as she was a joint owner and member of Sammut Properties alongside John, and she signed the initial commercial purchase agreement. The record also does not indicate that Sammut inherited his wife's interest in the entity after her death, and John testified that Sammut had not been involved in the management of Sammut Properties since the 1990s, and Sammut was not a member of the enterprise.

The record additionally does not indicate that Sammut had the right to control the building to the exclusion of others or that he exercised dominion, regulation, or command over the property. On the contrary, Sammut testified that he had not visited the subject property for months before the subject incident due to his retirement after the dissolution of Circle Engineering, and his relocation out of state. See *Gabrielson*, ___ Mich App at ___; slip op at 12 (stating, "Possession and control will normally lie with who is in the best position to prevent harm to others"). Moreover, during Sammut's absence, Sammut Properties entered into an agreement for the commission of an auction for materials related to Circle Engineering in the subject building, and Sammut Properties finalized an agreement to sell the property. Thus, Sammut's mere presence on the property with decedent when the incident occurred, his entry into the building using his own key, and Sammut's prior involvement with Circle Engineering, a dissolved entity that historically operated out of the subject building, is insufficient to establish that Sammut may be liable under the premises-liability doctrine. See *Morelli v Madison Hts*, 315 Mich App 699, 702; 890 NW2d 878 (2016) (opining, "A plaintiff may only recover from a defendant for injuries caused by conditions of the land if the defendant had legal possession and control of the premises"). Plaintiff failed to establish that Sammut had possession and control of the premises, or that there was a genuine issue of material fact in that regard. Accordingly, the trial court properly determined that Sammut is entitled to summary disposition on plaintiff's premises-liability claim.

Nor is there a factual dispute concerning whether Sammut may be held individually liable for the underlying incident. As detailed below, plaintiff neglects to cite any individual tortious acts by Sammut to warrant a different conclusion, particularly considering Sammut was uninvolved in the ownership, management, and operations of Sammut Properties or the subject premises. See *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 17; 779 NW2d 237 (2010) (providing, "Michigan law has long provided that *corporate officials* may be held personally liable for their *individual tortious acts done in the course of business*, regardless of whether they were acting for their personal benefit or the corporation's benefit") (emphasis added). Thus, plaintiff is not entitled to relief.

## V. NEGLIGENCE

Plaintiff next argues that the trial court erred when it dismissed plaintiff's negligence claims against Sammut, Khamo, and King Custom.

"Michigan law distinguishes between a claim of ordinary negligence and a claim premised on a condition of the land." *Jeffrey-Moise*, 336 Mich App at 625. "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Wilson v BRK*, *Inc*, 328 Mich App 505, 512; 938 NW2d 761 (2019) (quotation marks and citation omitted). "[I]f the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Bowman v Walker*, 340 Mich App 420, 426; 986 NW2d 419 (2022) (quotation marks and citation omitted). A premises-liability action, however, does not impede a separate claim grounded on an independent theory of liability based on the defendant's conduct. *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 15-16; 930 NW2d 393 (2018).

Decedent's injuries arose from a dangerous condition on the land, i.e., the unbolted gate located on the mezzanine level of the property, which sounds in premises liability. In her complaint, plaintiff contended, "One or more of [defendants'] negligent acts or omissions was a legal and proximate cause of [decedent's] fall on January 8, 2021, through the wooden gate on the mezzanine stairway landing[,]" particularly the failure of Sammut, Khamo, and King Custom to adequately inspect and maintain the premises, and to advise plaintiff of the purported hazard, despite having actual or constructive knowledge of its dangerous condition. However, when a "plaintiff alleges that the dangerous condition was created by the actions of defendant or its employees—or more accurately, their failure to act—that allegation does not transform a premises-liability action into one of ordinary negligence." *Jeffrey-Moise*, 336 Mich App at 625. Thus, the trial court did not err by finding that plaintiff's claims sounded only in premises liability.

Plaintiff cites to *Laier v Kitchen*, 266 Mich App 482; 702 NW2d 199 (2005), to argue that her complaint sounds in both ordinary negligence and premises liability, and her claims must be considered in the proper contexts. In *Laier*, this Court held that a plaintiff may advance both a premises-liability claim and an ordinary-negligence claim if the claims are grounded on independent theories of liability. *Id*. at 484. In *Laier*, the decedent, Rodney Laier, was killed on the defendant's property while he was assisting the defendant with repairs to a front-end loader of a tractor. *Id*. In the midst of the repair, Laier was crushed by the front-end loader bucket when he and the defendant attempted to fix a hydraulic hose. *Id*. at 493. The plaintiff filed a wrongful-death action alleging that the defendant's negligence in operating and repairing the tractor caused Laier's death, and claiming that the defendant " 'owed a duty to Rodney to use due care and caution in the operation and control of the tractor and bucket.' " *Id*. The *Laier* Court determined that the defendant failed to secure the bucket of the tractor in a raised position immediately before the decedent moved under the bucket to work on the hose, creating a question of fact regarding the defendant's negligence. *Id*. at 495. This Court further resolved that the duty to operate the tractor in a safe manner was sufficient to maintain an ordinary negligence claim, and the defendant's duty to shield the decedent from unreasonable risks of injury and to warn of those risks as they pertained to the tractor as a condition of the premises was sufficient to maintain a premises liability claim. *Id*. at 495, 497.

Plaintiff here does not allege an ordinary negligence claim that is "grounded on an independent theory of liability based on the defendant's conduct." *Laier*, 266 Mich App at 493. Plaintiff does not contend that Sammut, Khamo, or a King Custom representative were responsible for unbolting the gate before the subject incident, nor does plaintiff allege that any of the aforementioned parties actively opened or modified the subject gate, or engaged in direct conduct that caused decedent's fall. See *Pugno*, 326 Mich App at 15-16. Furthermore, the wooden stairway and the mezzanine-level gate were plainly a condition of the premises. Because plaintiff failed to plead sufficient allegations indicating ordinary negligence, the trial court did not err when it barred plaintiff from proceeding on that theory.

VI. NOTICE

Plaintiff next argues that the trial court erroneously determined that no genuine issue of material fact existed related to whether Khamo and King Custom had notice of the dangerous condition.

The initial inquiry when assessing a claim of premises liability is to determine the duty owed by the possessor of the premises to a person entering the property. *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). The duty a possessor of land owes to a person who enters upon the land is conditional upon whether the visitor is deemed an invitee, a licensee, or a trespasser. *Kandil-Elsayed*, 512 Mich at 111. A plaintiff will be categorized as an invitee solely if the purpose for which the person was invited onto the owner's property was "directly tied to the owner's commercial business interests." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 604; 614 NW2d 88 (2000). Here, decedent was invited to the premises by Sammut in order to fulfill the purchase-agreement amendment between Khamo and Sammut Properties, which required the removal of property from the subject building. As decedent acted in furtherance of its terms by disposing of the excess property belonging to its own former tenants, decedent was an invitee.

Due to the "special relationship" between land possessors and invitees, "an invitee is entitled to the highest level of protection under premises liability law," which is the "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citations omitted). "A premises owner breaches its duty of care when it knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016) (quotation marks and citation omitted). A plaintiff must establish that "the premises possessor had actual or constructive notice of the dangerous condition at issue." *Id.* (quotation marks and citation omitted).

There was no genuine issue of material fact that Khamo, and thus King Custom[2], lacked actual notice of the dangerous condition considering the location and concealed nature of the unbolted gate, Khamo's limited visitations to the property before the subject incident, and Khamo's deposition testimony. Regarding his knowledge of the gate's existence, Khamo testified, "I only went—first of all, I only went one time to the building prior to the closing[,]" and, "I honestly—I didn't even know it was a gate there, so I didn't pay attention to it. I don't know if it was unbolted, was bolted, to unbolt it [sic]. I don't know like." Thus, as opined by the trial court, "the evidence demonstrates that Defendant Khamo did not even know that the gate existed or that the gate was unbolted. He was the property owner for approximately one week prior to this incident and had only visited the property twice."

As an invitee plaintiff may also demonstrate that a defendant had constructive notice of the dangerous condition. *Lowrey*, 500 Mich at 9. Constructive notice means that "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Id.* at 11-12. A defendant is not required to offer evidence of a "routine or reasonable inspection" to prove that it lacked constructive notice of a hazard on its property. *Id.*

---

[2] We note that the trial court granted King Custom summary disposition due to the entity's lack of possession and control of the subject property, as opposed to its lack of notice of the alleged hazard. Nonetheless, we will address plaintiff's contentions against King Custom.

at 10. Rather, a defendant can "establish its entitlement to summary disposition by demonstrating that [the] plaintiff failed to present sufficient evidence of notice." *Id*. Unless the plaintiff presents evidence, not speculation, to establish that the premises owner had constructive notice of a dangerous condition, summary disposition is appropriate. *Id*. at 11-12.

Here, plaintiff failed to present any evidence of constructive notice, i.e., that the hazard was of such a character, or the hazard existed for a sufficient time, that a reasonable premises possessor would have discovered it. The record does not provide any indication as to how long the unbolted condition of the gate existed. During his deposition, Sammut testified that "it's been years and years and years since that gate has been opened. There was no reason for it to be opened." Sammut reiterated that the gate "hadn't been opened in a long time. Even me and my brother were talking about it the other day, and he's like, we cannot remember the last time it was open." John similarly testified that he had not seen the gate open in over 10 years, and the gate remained closed during the regular course of business as the unfastening process required wrenches. Sammut further stated that he was unaware of who may have removed the bolting hardware, and it would be difficult to observe that the bolts were disconnected. Sammut elaborated that "to remove those bolts, you needed either a ladder or some way to get up because you could not reach the bottom bolt from up top side. There's just no way." Accordingly, it is unclear when the defect came into existence, particularly considering the gate's construction in the 1980s, and its rare use as a means to transport large materials thereafter, to warrant Khamo's discovery of the dangerous condition within a week of ownership of the premises. See *Goldsmith v Cody*, 351 Mich 380, 389; 88 NW2d 268 (1958) (granting summary disposition in favor of the defendant as "[t]he missing link in [the] plaintiff's case [was] any proof as to when the [hazardous condition arose]").

Plaintiff likewise failed to advance any proof that the hazardous condition was of such a character that Khamo, and thus King Custom, ought to have taken notice of it. Plaintiff's own contentions concerning the unrecognizable nature of the gate, the images of the purported hazard, and the deposition testimonies of Sammut and John all indicate that the unbolted nature of the subject gate was not readily apparent. Plaintiff additionally alleges that the demolishment of the gate and stairway after the incident by Khamo and King Custom, despite notice from a fire marshal prohibiting such conduct, creates a presumption that if the evidence were produced at trial, it would operate against the defendants who deliberately destroyed it. However, the notice dated January 8, 2021, did not bar the demolition of the gate and stairway, rather, it stated, "THIS BUILDING NOT TO BE OCCUPIED[.] LIFE SAFETY/HAZARDOUS CONDITIONS EXIST[.] It shall be unlawful to remove, deface or destroy *this notice* until issuance of the Certificate of Occupancy." (Emphasis added.) Furthermore, law enforcement investigated the underlying incident, and officers captured photographs of the premises to determine the circumstances surrounding decedent's fall. Ultimately, because plaintiff failed to present sufficient evidence to establish a genuine factual dispute regarding actual or constructive notice, the trial court did not err by granting Khamo and King's motion for summary disposition on the basis of absence of notice.

## VII. POSSESSION AND CONTROL

For the last argument plaintiff argues that the trial court erred when it dismissed King Custom as a party from the underlying matter due to its purported lack of possession and control of the premises.

As previously stated, it is well established that "premises liability is conditioned upon the presence of both possession and control over the land." *Kubczak*, 456 Mich at 660 (quotation marks, citation, and alteration omitted). "This rule is based on the principle that a party in possession is in a position of control, and *normally* best able to prevent any harm to others." *Finazzo v Fire Equip Co*, 323 Mich App 620, 627; 918 NW2d 200 (2018) (quotation marks and citations omitted). "Liability for negligence does not depend upon title; a person is liable for an injury resulting from his negligence in respect of a place or instrumentality which is in his control or possession, even though he is not the owner thereof." *Id*. (quotation marks and citation omitted).

The only conduct attributable to King Custom to establish the entity's possession and control of the premises was of its owner, Khamo, and the singular delivery of equipment related to the operations of King Custom days before the incident. During his deposition, Khamo testified that he did not possess keys to the property between closing on December 30, 2020, and the incident on January 8, 2021. Accordingly, when he visited the premises on January 4, 2021, to oversee the delivery of a CNC machine and a beam saw by a rigging company, Khamo recalled: "First of all, we did not have the keys in order to enter the building. And then when I entered the building, I don't remember who came and opened the door for me, whether the Sammut employees or whether it was real estate." Besides the January 4, 2021 event, no further equipment or property belonging to Khamo or King Custom was delivered to the building before the incident, nor were any King Custom employees present on the property, nor did King Custom conduct any business on the premises. Furthermore, as of closing, and for days after closing, Sammut Properties had yet to adequately vacate the premises, resulting in the imposition of the purchase-agreement amendment, which provided Sammut Properties until January 18, 2021, "to vacate and remove all personal property." Additionally, on the day of the subject incident, neither Khamo nor any other King Custom representative provided decedent with access to the property, occupied the building, or maintained knowledge that decedent was inside the premises, such that King Custom would be the party "best able to prevent any harm." *Finazzo*, 323 Mich App at 627 (quotation marks and citations omitted).

In light of the undisputed evidence, it is evident that King Custom maintained neither possession nor control of the premises at the time of decedent's fall. Concluding otherwise would indicate a party's mere presence or performance of minimal activities on a parcel of land is sufficient to demonstrate possession and control. See *Janini v London Townhouses Condo Ass'n*, 514 Mich 86, 104-105; ___ NW3d ___ (2024) (stating, "We take this opportunity to clarify, once more, that the proper inquiry when considering the duty owed in a premises-liability context is who holds possession and control over the land where a person was injured and not merely who owned the land").

Even assuming that there was a genuine factual dispute regarding whether King Custom maintained possession and control of the subject premises, because King Custom lacked notice of the alleged dangerous condition, summary disposition remained proper. See *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015) (providing that this Court can affirm a decision on a motion for summary disposition for different reasons than those identified by the trial court). Thus, the trial court properly dismissed King Custom as a party from the underlying matter.

-9-

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel
