*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELISSA COPELAND as personal representative of
the ESTATE OF RICHARD GRAY,

UNPUBLISHED
February 21, 2023

Plaintiff-Appellee,

v

No. 358568
Genesee Circuit Court
LC No. 20-114058-NO

ASCENSION MEDICAL GROUP GENESYS,

Defendant-Appellant,

and

PROVIDERS STAFFING INC and 5377 AND 5397
CORUNNA ROAD LLC,

Defendants.

Before: GLEICHER, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

At issue in this premises liability action is who had control and possession of a handrail connected to an outdoor staircase at a medical office—the landlord or the tenant—and whether the plaintiff estate created a genuine issue of material fact that the responsible party or parties had constructive notice of the hazardous condition. Viewing the evidence in the light most favorable to the nonmoving party—the estate—a reasonable jury could determine that either the landlord or the tenant—or both—had possession and control of the area in question and that therefore either or both owed a duty to the injured invitee. Further, evidence regarding severe corrosion on the subject handrail and multiple repairs made to another handrail on the property create a genuine issue of material fact regarding both actual and constructive notice. Accordingly, we vacate the order granting summary disposition in favor of the defendant landlord, 5377 and 5391 Corunna Road, LLC, and remand for continued proceedings. We affirm in all other respects.

-1-

## I. BACKGROUND

In November 2019, Richard Gray visited his physician whose office is located at 5377 Corunna Road in Flint. Gray's son-in-law drove Gray to the office, parked near Corunna Road, and he and Gray approached the north or front entrance to the building. As they climbed a short flight of stairs, Gray grabbed the handrail for support. The post supporting the railing gave way and Gray fell. The extent of Gray's injuries was not immediately perceptible and his estate filed suit after Gray died several months later.

Ascension Medical Group Genesys (tenant) leased the medical office building located at 5377 Corunna Road and two Ascension-connected physicians operated their practice from that location. The building was owned by 5377 and 5397 Corunna Road, LLC (landlord). The leased building is part of a development that includes a second building that was vacant at all relevant times. The two buildings share a parking lot. The landlord's principal is Dr. Harvey Ring. Dr. Ring conducted his own medical practice from the building until his 2016 retirement to Florida.

The lease describes the leased premises as "the improved real property, at 5377 Corunna Road, Flint, MI 48532, . . . for the Tenant's exclusive use." This provision continues, "If the Leased Premises are a part of the Landlord's development, Landlord further grants a non-exclusive right to use the driveway(s), parking lots, and common areas (which may consist of the waiting room, business office, and employee lounge) (the "Property")." The leased premises are further described as being "approximately 2,850 square feet."

The Repairs and Maintenance section of the lease agreement provides:

> 8.1 The Tenant will keep the Leased Premises in as good condition as when turned over to Tenant, reasonable wear and tear and damage by fire and the elements excepted.

> \* \* \*

> 8.3 The maintenance and repair obligations of the Tenant specifically extend to all interior walls, interior doors, interior windows, plumbing and electrical fixtures within the Leased Premises, except as these obligations may be covered by manufacturer or contractor warranties. . . .

> 8.4 The maintenance, repair and renovations obligations of the Landlord extend to all areas other than the Leased Premises; provided, however, that in the event the Leased Premises are the Property . . ., the obligations of the Landlord extend to all HVAC, plumbing, electrical, structural, systems and elements.

The lease does not specifically identify the outside stairwells as being the sole responsibility of either the landlord or the tenant. During depositions, the attorneys asked probing question to determine which party or parties had a duty to inspect and repair the handrail at the building's front entrance and whether either the tenant or the landlord had notice, or should have been on notice, of the handrail's defective condition.

Dr. Ring testified as the owner of the building and as the landlord. Dr. Ring ran his medical practice at 5377 Corunna Road from 1975 to 2016, and then sold his practice to Dr. Nada Abdelbasit. Dr. Ring asserted that he had handrails installed at both the front and rear entrances of the building in approximately 2010, and had not inspected the subject railing since he retired. Dr. Ring admitted that he was responsible for repairing the handrail, but only if the tenant informed him of the problem. The tenant was responsible for inspection in Dr. Ring's opinion.

Dr. Ring described that Cooper Commercial Management Company had helped maintain the property over the years as he was a close personal friend of Winfield Cooper III. Cooper had inspected and made repairs on the handrail at the south or rear entrance to the building, but there "never had [been] any repairs to the north entrance." The south handrail "had rotted out at the bottom" and was "falling off the building." Indeed, the tenant had notified Dr. Ring of problems only with the south entry handrail, never the north entry handrail, prior to Gray's fall. When asked whether the stairway outside the building was a "common area," Dr. Ring indirectly answered that each building in the complex had separate landscaping and a shared parking lot.

The landlord and tenant each provided witnesses who supported their own theories on who was responsible for inspecting and maintaining the handrail. The landlord's witnesses placed all duty on the tenant, and the tenant placed all duty on the landlord. However, some of the tenant's agents admitted that they had observed issues with the south handrail in the past and notified either Dr. Ring or Cooper. They also admitted that they had ample opportunity to observe the north entrance handrail as they locked and unlocked the door on a daily basis and often removed snow, ice, and debris from the stairs. Cooper denied that he had any duty to inspect the handrails. He also stated that his company did not provide commercial management services for the property despite that he received $150 each month from the tenant, a fee described in the lease as "[a]n administration fee, not to exceed $150 a month, for a Property Management Company responsible for management and administration for the leased premises and grounds."

Evidence supported that the north and south handrails were installed at the same time and were made of the same material. The individual who replaced the north handrail testified that it was not built to withstand Michigan winters and should have been regularly painted or replaced after five years. However, no one preserved the north handrail or even took a picture of it. Witness testimony suggested that a bracket intended to hold the post in place corroded completely through and cracked. Such damage would have taken several years.

At the close of discovery, both the tenant and the landlord sought summary disposition under MCR 2.116(C)(10).[1] The tenant contended that the stairwell and handrail outside of the building were not part of the leased premises and were under the landlord's sole possession and control. Accordingly, it could not be liable for the hazardous condition of the handrail.

The landlord sought summary disposition based on the lack of actual or constructive notice of the north entrance handrail's condition. The landlord emphasized that no one had complained about the north handrail prior to Gray's fall. And although the estate argued that the condition of the south entrance handrail should have placed the landlord and tenant on notice that the north

---

[1] Defendant Providers Staffing, Inc had been dismissed from the lawsuit without prejudice.

entrance handrail was deteriorating, the landlord argued that the two handrails were not similarly constructed and were installed several decades apart, a position contrary to Dr. Ring's deposition testimony. The tenant joined the landlord's motion on notice grounds.

The landlord separately responded to the tenant's claim that the landlord had possession and control of the handrail. The landlord contended that the lease only provided for the parking lot to be a common area, not the stairwells and ramps directly leading into 5377 Corunna Road. "Only the tenant's employees, agents, patients, and patients' families[] use the stairs," the landlord argued, and only "to gain access to" the leased space. The landlord continued that all prior repairs to the south entrance handrail had been made after the tenant inspected the area and provided notice. Dr. Ring, as the landlord, was only involved to approve and pay for the repairs. The landlord concluded, "While the Lease Agreement is vague as to who should inspect the property, by history and practice it was the tenants that determined the condition of the railings, seeking earlier repairs and renovations for same, not Dr. Ring, who does not reside in Michigan." Notably, the landlord did not contend that it was entitled to summary disposition based on lack of control and possession. Rather, the landlord implied a shared duty in this regard.

The tenant retorted that the landlord attempted to shift responsibility onto it for the development's common areas simply because the second building was vacant at that time. Even though it "had exclusive occupancy of the building proper, it had only a 'non-exclusive use' of the remainder of the premises, which the Landlord kept in common for his adjacent property." The tenant further asserted that its need to repeatedly request repairs, which fell on deaf ears, was evidence of its lack of control over the premises.

The estate fought both defendants' summary disposition motions. The estate contended that defendants disposed of the evidence, which should preclude summary disposition standing alone. The estate further argued that both defendants had possession and control of the handrail. As to the tenant, the estate contended that the lease did not identify the stairs leading into the building as a common area, and thereby made their condition a shared responsibility of the tenant. And both had at least constructive notice of the dangerous condition. The tenant's staff "would have been in that area daily . . . to lock and unlock the doors" and "to check the front entry way and steps daily for ice, snow and debris." The staff would have noticed the condition of the handrail during these activities. As to the landlord, the estate contended that the poor condition of the south entrance handrail placed it on notice that the north handrail should be inspected as well.

The circuit court determined that the stairwell and handrail were in the sole control and possession of the tenant and therefore summarily dismissed the estate's claims against the landlord. Specifically, the court determined that the stairwell was part of the "Leased Premises" and "[a]s such" was under the possession and control of the tenant. Additionally, "as the stairs and handrail are not specifically excluded as one of the Tenant's obligations, nor included as one of the Landlord's obligations, it would be one of [the tenant's] maintenance and repair obligations." The court further determined that the tenant should have known of the hazardous condition as the tenant had "notice of a similar condition of the south handrail." "This, coupled with the fact that the rusted bracket would have been observable for quite some time prior to [Gray's] fall," the court found, amounted to constructive notice.

We granted the tenant's application for leave to appeal, "limited to the issues raised in the application and supporting brief." *Estate of Gray v Ascension Med Group Genesys*, unpublished order of the Court of Appeals, entered February 10, 2022 (Docket No. 358568). Those issues were (1) whether the circuit court erred in finding the tenant to be in exclusive control and possession of the stairway and handrail, (2) whether the court erred in finding that the landlord did not have any control or possession of the area, and (3) whether the court erred in determining as a matter of law that tenant had constructive notice of the hazard.[2]

## II. ANALYSIS

The circuit court correctly denied the tenant's motion for summary disposition, but erred in dismissing the estate's claims against the landlord. There is a triable question of fact regarding possession and control, and the law provides that both the landlord and tenant can be liable at the same time. There also exists a triable fact question on the issue of notice.

We review de novo a lower court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim" and should be granted when after reviewing "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party," there remains "no genuine issue regarding any material fact" that could be sent to trial "and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citations omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## A. POSSESSION AND CONTROL OF THE HANDRAIL

In a premises liability case, a plaintiff must prove the traditional elements of negligence: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach was a proximate cause of the plaintiff's injury, and (4) that the plaintiff suffered damages. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). "Michigan law has recognized that a special relationship exists between owners and occupiers of land and their invitees, including between a landlord and its tenants and their invitees and between a merchant and its invitees." *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013) (cleaned up). Business owners, and the landlords that own the premises, owe a duty to invitees "to exercise reasonable care to protect [them] from an unreasonable risk of harm caused by a dangerous condition on the land." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). An invitor is liable to an invitee for injury caused

---

[2] The trial court also properly denied summary disposition to the landlord on the issue of notice, as noted below.

by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. [*Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000).]

"It is well established . . . that 'premises liability is conditioned upon the presence of both possession and control over the land,' " and "not necessarily ownership." *Kubczak v Chem Bank & Trust Co*, 456 Mich 653, 660; 575 NW2d 745 (1998), quoting *Merritt v Nickelson*, 407 Mich 544, 552-553; 287 NW2d 178 (1980). See also *Quinlivan v Great Atlantic & Pacific Tea Co*, 395 Mich 244, 270; 235 NW2d 732 (1975).

More than one person can have possession and control over premises, such as in a landlord and tenant situation. An example of this dual possession and control is found in *Siegel v Detroit City Ice & Fuel Co*, 324 Mich 205; 36 NW2d 719 (1949). In *Seigel*, a theater company leased a parking lot from a neighboring ice company. *Id*. at 207. There were several driveways that could be used to access the parking lot, and alleys and drivable "passageways" that were used by both the theater and the ice company, as well as their invitees. *Id*. at 207-208. The plaintiff was injured after he parked in the leased lot and walked across "the easterly drive" where he fell in a hole. *Id*. at 208-209. The parking lot lease required the theater company to keep the lot in good repair, but also required it to not interfere with the areas intended for joint use. *Id*. at 213. Ultimately, the Supreme Court held:

This is not a case where either the tenant or the landlord had exclusive control and possession of common passageways. The facts here show that the defendants each had control and possession. Liability to third persons lawfully on the premises for injuries due to the defective condition of the premises depends on control and possession of the premises, thus both defendants are liable to plaintiff. Plaintiff's decedent was the invitee of the defendant theatre company and in using this driveway also became the invitee of the defendant ice company. [*Id*. at 214 (citation omitted).]

In this case, the stairway and handrail were not specifically identified as a common area or as being under the sole control of the tenant in the lease. The repair and maintenance section of the lease also did not specifically identify these features as being the responsibility of either the landlord or tenant. Accordingly, there remains a genuine issue of material fact regarding control and possession under the lease language.

The deposition testimony tends to establish joint control and possession. Dr. Ring described that it was his duty to secure and pay for repairs once the tenant notified him of a hazard. On the tenant's side, although one witness placed all duty to inspect and maintain on the landlord, he also admitted that the tenant had taken over snow removal duties in the common areas. Dr. Abdelbasit, like Dr. Ring, described a hybrid relationship where the tenant would notify the landlord of issues and the landlord would secure repairs, but also where the tenant reached out

directly to seek repairs. Overall, the fact that the landlord always approved repairs before they were made is evidence of the landlord's shared control over this area.

Where there is a fact question regarding possession and control, the issue must go before the jury. As stated in *Orel v Uni-Rak Sales Co*, 454 Mich 564, 569; 563 NW2d 241 (1997), if the issue on possession and control is placed before the jury, the court must give the jury the instruction provided in M Civ JI 19.02, which provides:

A "possessor" is defined as—

(a) a person who is in occupation of the land with intent to control it; or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it; or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession as I have just explained.

The estate created a factual question regarding control and possession of the entryways into 5377 Corunna Road and the attached handrails. That factual question precluded granting either the tenant or landlord summary disposition on this issue.

## B. CONSTRUCTIVE NOTICE

An invitor is liable when an unsafe condition "is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have knowledge of it." *Carpenter v Herpolsheimer's Co*, 278 Mich 697, 698; 271 NW 575 (1937). Constructive knowledge may be inferred when "[the condition] is of such a character or has existed a sufficient length of time that [the defendant] should have had knowledge of it." *Hampton v Waste Mgt of Mich, Inc*, 236 Mich App 598, 604; 601 NW2d 172 (1999) (citations omitted). "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks v Exxon Mobil Corp*, 477 Mich 983, 984; 725 NW2d 455 (2007). To defeat summary disposition in a premises liability case when a defendant alleges a lack of notice, a plaintiff must present some evidence that the defendant had actual or constructive notice of the dangerous condition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 10; 890 NW2d 344 (2016).

The evidence creates a triable issue of fact on notice. First, a contractor testified that he had repaired the handrail at the south entrance several times and the handrail at the north entrance was "basically the same wrought iron residential-type stuff." Dr. Ring testified that the two handrails were installed at approximately the same time. Given that the handrails were approximately the same age and were made of the same material, the chronic problems with the handrail at the south entrance arguably should have made the landlord and tenant curious about the condition of the handrail at the north entrance.

Second, the tenant's employees saw this handrail every day that the medical practice was open. Every day, someone had to unlock and lock the north door. The tenant's employees often removed snow, ice and other debris from these stairs. The contractor indicated that he could not

determine how long ago the rust had corroded through the north handrail; Michigan's weather conditions made such an estimate too speculative. The estate's expert testified that a standard railing like the one used would need to be painted to protect the metal from the elements or the handrail would need to be replaced in five years. The record is clear that no maintenance was performed on this handrail between approximately 2010 and 2019. Based on the testimony regarding the amount of visible rust and corrosion noted after Gray's fall, it is reasonable to conclude that the danger would have been "clear and obvious" even upon casual inspection. The expert also cited an email sent by the tenant's agent immediately after the fall describing the north handrail as "rusted completely through," again a condition that should have been obvious on casual inspection. Of greatest import, the expert described:

> My estimation of how long it would have been unsafe would have been at least many months. It takes a significant amount of time or takes time for it to rust through and become deformed and become unsafe and unstable. I would say that it was unsafe for months, possibly a year prior to that and should have been visible five years or so prior to the accident.

Given this testimony, the evidence supports, but does not demand, a conclusion that the tenant who had been renting the building for three years should have noticed the condition. Based on the same evidence, a question of fact exists regarding whether the landlord should have noticed the condition before he vacated his own medical practice in the building in 2016. Thereafter, the management company the landlord loosely employed should have thought to inspect the north handrail given the problems with the south handrail. Accordingly, neither defendant was entitled to summary disposition on this ground.

We affirm in part, vacate in part, and remand for continued proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron